Gholson, J.
The plaintiffs are judgment creditors of John R. Robinson, claiming a lien by their judgment on certain lands which were owned by Robinson. The defendant Dun-levy holds a mortgage executed by John R. Robinson and his wife to the Sandusky City Bank, which purports, in consideration of ten thousand dollars, to convey the same lands, but subject to this condition: “Provided always, and these presents are upon this condition, that whereas the said Robinson is indebted to said bank for moneys loaned, and for his liability on divers bills of exchange and promissory notes, now, if said Robinson shall discharge his said several liabilities in six months from this date, then these presents shall become void; otherwise to remain in full force and virtue.” The mortgage was duly executed, acknowledged and recorded, before the rendition of the judgment. It is admitted that there was an existing indebtedness to the bank, for money loaned, and on certain bills and notes, to the amount of |8084. But it is claimed, that the description of that indebtedness, in the defeasance of the mortgage, is so vague and indefinite as to render the mortgage invalid against judgment creditors, who ought, therefore, to be first paid out of the proceeds of the sale of the mortgaged property.
The question whether a,n instrument be a mortgage, is to be distinguished from the question, what are the respective rights *234 of mortgagor and mortgagee, their relation to each other and to the title or estate in the land.
The definition of a mortgage is found in numerous authorities.
“ A mortgage .in fee, is an estate upon a condition defeasable by the performance of the condition according to its legal effect.” Erskine v. Townsend, 2 Mass. 493, 495.
“ At common law, a mortgage is defined to be a deed conveying lands, with a condition that it should be void upon the payment of money, or the doing of some other act.” Hebron v. Center Harbor, 11 New Hamp. 571, 574.
“ A mortgage is an executed contract, a present transfer of title, although conditional and defeasible.” Barnard v. Eaton, 2 Cush. 294, 303.
“ A mortgage is a contract, by which one person conveys property to another as a security for a debt. The matter must be the subject of stipulation and agreement between the parties.” Lloyd v. Currin, 3 Humph. 462, 464.
“ In all cases the true test, whether a mortgage or not, is to ascertain whether the conveyance is a security for the per formance or non-performance of any act or thing.” Flagg v Mann, 2 Sum. 486, 533.
To constitute a mortgage of real estate, the formalities prescribed for a conveyance of it must be pursued. There must also be an agreement, that the conveyance is a security for the debt to be paid or the thing to be done, but for this agreement no form is prescribed by our law. This is shown by the case of Perkins v. Dibble, 10 Ohio, 433, in which it was held, that an instrument was a mortgage, even at law, though the defeasance followed, instead of preceding the signature of the grantor. “ It shows,” said the court, “ the purpose for which the deed was delivered, and that purpose was as collateral security for the payment of money. And every deed made for such purpose is a mortgage.”
In the present case it can not be properly claimed, that the instrument as between the parties, is not a mortgage, or, that ■ as between them, the debt really intended to be secured may not be ascertained by evidence. There is a formal convey *235 anee of the land, there is language showing most clearly that this conveyance was intended as a security for the payment of money. It is true, that the amount of the money to be paid is not stated, but it is stated to be the money, due from the one party to the other, as having been loaned, or, for which evidences of indebtedness of a specified description had been given. Thus the instrument, though not showing the amount of indebtedness, points' to the sources from which it may be ascertained. But had it been even more indefinite, we do not understand that a resort to extrinsic circumstances, to give it application, and make it operative, would have been inadmissible. The rule in such a case is clearly expressed in Colpoys v. Colpoys, Jacob, 451. “In the case of a patent ambiguity, that is one appearing on the face of the instrument, as a general rule, a reference to matters dehors the instrument is forbidden. It must, if possible, be removed by construction, and not by averment. But in many cases this is impracticable, where the terms used are wholly indefinite and equivocal, and carry on the face of them, no certain or explicit meaning, and the instrument furnishes no materials by which the ambiguity thus arising can be removed. If in such cases the court were to reject the only mode by which the meaning could be ascertained, viz: the resort to extrinsic, circumstances, the instrument must become inoperative and void. As a minor evil, therefore, common sense and the law of England (which are seldom at variance), warrant the departure from the general rule, and call in the light of extrinsic evidence. The books are full of instances sanctioned by the highest authorities both in law and equity. When the person or the thing is designated on the face of the instrument, by terms imperfect and equivocal, admitting either of no meaning at all by themselves, or of a variety of different meanings, referring tacitly or expressly for the ascertainment and completion of the meaning to extrinsic circumstances, it has never been considered an objection to the reception of the evidence of those circumstances, that the ambiguity was patent, manifested on the face of the instrument.” The admission of extrinsic evidence for the purpose of applying a written instru *236 ment to its proper subject matter, is familiar in practice, and sustained by the highest authorities. Bradly v. Washington, Alexandria & Georgetown Steam Packet Co., 13 Peters, 89; Fish v. Hubbard, 21 Wend. 652; Ely v. Adams, 19 Johns. 313. Even in conveyances of real estate, a general description is enough, if the thing granted can be ascertained. “In all grants made by individuals in their own right, a general description is sufficient.” Haven v. Richardson, 5 New Ham. 113, 128, and authorities cited.
We find no difficulty in coming to the conclusion that, at common law, the instrument under consideration would be regarded as a mortgage, not conveying to the grantee an absolute estate, nor entitling the grantee to regard it as nugatory and void, but creating a lien on the land for the payment of the debt due, and really intended to be secured.
We come then to inquire, whether this effect has been altered as to third persons by any thing in the legislation of the State. Nothing of the kind is found in the letter of the statute regulating conveyances, their acknowledgement and record. That statute speaks of “ any deed, mortgage or other instrument of writing by which any land, tenement or hereditament shall be conveyed, or otherwise affected or incumbered in law.” It provides for signing and sealing, for witnesses, for acknowledgment and for record, but does not prescribe the form of the deed, mortgage or other instrument. As to the form, the description of the land conveyed, or, in case of a mortgage, of the debt secured, we are left to the general rules of law.
But it is argued, that the policy of the statute requires a change in the general rules of law, and that a more accurate description of the debt secured by a mortgage, is necessary for the benefit and protection of third persons, who may deal with the mortgagor.
The answer to this argument is, that had the legislature intended such a change in the rules of law, it would have been expressed. It might have been provided, that the mortgage to be recorded, should be so definite in the description of the property conveyed, and of the debt secured, as to require nc *237 resort to extrinsic evidence. The rules of law might have been so changed, as to require not only that notice should be. given by the record of any contract between parties conveying or encumbering land, but that such notice, by expressions in the contract or otherwise, should be sufficient to enable third persons to deal understanding^, and without the necessity for other or further inquiry, in reference to that land. This has not been done, and we know of no principle which would entitle us to make so important an addition to the provisions of the statute. We think we can say, that the party is bound by the notice he gives — he can not, as to third persons who act on the faith of the correctness of that notice, assert what would be in contradiction to its terms— he can not be permitted to mislead or deceive. But the duty of giving more full and complete information than the rules of law before required, and of thus relieving third persons of the trouble of informing themselves, by inquiry from the parties, or from the sources to which the notice points, is not imposed.
It may, or may not, be a wise policy to impose this duty 'upon parties, but the question, how far legislation should go, is not for a court. In construing a law, it may be that where there is doubt as to the meaning or application of its language, the policy which induced its enactment, the mischief it was intended to prevent, is a proper subject of consideration. So the public good, or public policy, in some classes of cases, has been regarded as a proper ground or reason for a judicial decision, and contracts have been held illegal and void as against public policy. Egerton v. Brownlow, 4 H. L. Cas. 1-143, 237. But it would be a wholly unwarranted exercise of power, if not a clear usurpation, for a court upon a conception of what would be wise policy, to change established rules of law to a greater extent than the language of the legislature, fairly interpreted, required. The danger and impropriety of any such principle of decision, is strongly expressed in the case just cited, by a very eminent judge. Public policy, he says, “is a vague and unsatisfactory term, and calculated to lead to uncertainty and error, when applied *238 to the decision of legal rights; it is capable of being understood in different senses: it may, and does, in its ordinary sense, mean political expedience, or that which is best for the common good of the community; and in that sense there may be every variety of opinion, according to education, habits, talents, and dispositions of each person who is to decide whether an act is against public policy or not. To allow this to be a ground of judicial decision, would lead to the greatest uncertainty and confusion. It is the province of the statesman, and not the lawyer, to discuss, and of the leg islafcure to determine, what is the best for the public good, and to provide for it by proper enactments. It is the province of the judge to expound the law only; the written, from the statutes, the unwritten or common law, from the decisions of our predecessors and of our existing courts, from text writers of acknowledged authority, and upon the principles to be clearly deduced from them, by sound reason and just inference; not to speculate upon what is the best, in his opinion, for the advantage of the community.” Parke, B., 4 H. L. Cas. 123.
We have been urged to adopt and follow in the decision of this question, the decisions of two other states. As to one of these states, New York, without presuming to decide whetner the decisions of its courts upon its statute are correct, we think that statute so far differs from ours, that those decisions would not be a safe guide. A case in Connecticut decided in 1822, Pettibone v. Griswold, 4 Conn. 163, appears to have recognized or established a principle in that state, “ that the record of the mortgage must disclose with as much certainty as the nature of the case will admit of, the true state of the incumbrance.” This principle is professedly founded on the policy of the recording system of that state Hart v. Chalker, 14 Conn. 77. Since 1822, the courts of Connecticut have been engaged in deciding what degree of certainty the nature of cases would require to make mortgages valid. The question, in a dozen or more cases, has come before the supreme court of that state, and has evidently produced a degree of painful uncertainty in mortgage *239 securities. This is shown by the case of Merrills v. Swift, 18 Conn. 257, in Which the court was equally divided upon the question, whether a mortgage, to secure several notes and a book debt to the amount of fifteen hundred dollars, or thereabouts, 'was valid. This uncertainty must ever exist, when the construction and effect of a written instrument, as conferring a right or title, are made to depend, not upon simple and elementary rules of law, easily capable of application, but upon a question of degree, to be decided upon the character and nature of each particular transaction. It is not surprising, therefore, that the course of decisions should fluctuate, and that, in the last decision in Connecticut, we should meet with the remark, in reference to certain deeds under examination — “ Although our early decisions would hold them void, for vagueness, our decisions for the last ten or fifteen years, have gone further, and established the law to be liberal enough to sustain mortgages quite as indefinite and vague as the present.” Utley v. Smith, 24 Conn. 290, 314.
Did we feel at liberty to extend our statuta upon a notion of public policy, we should hesitate long, before we adopted a principle from another State, the working of which appears to have been so harsh and unsatisfactory, as to have led to its relaxation, if not to its practical abandonment.
It will, generally, be found that the interest of a mortgagor to have the amount of the incumbrance stated, with a view to his future dealings, and the interest of the mortgagee to be relieved from any necessity of proof as to the amount of his claim, and, also, to be able to make, when needed, a transfer of the claim and the security, will induce a reasonable certainty in the condition of mortgages. The inconvenience which may occasionally arise to third persons from uncertainty of description is more sufferable than the gross injustice which would be frequently inflietedby a stringent rule as to certainty. Such a rule, especially in view of our decisions as to the effect of notice of unrecorded mortgages, would present another opportunity for the sharp and vigilant to obtain an unjust advantage over the confiding and ignorant.
*240 AY e think that the mortgage in this ease was valid, and, to the extent of the indebtedness admitted, constitutes the first lien upon the lands.

Judgment for defendants.

Brinkerhoff, C.J., and Scott, Sutliff, and Peck, JJ., concurred.