ELY and others *against* ADAMS.

DEBT against the defendant, late sheriff of *Genesee*, for the escape of *William White*, tried at the *Genesee* circuit, on the 6th of *July*, 1821, before Mr. Justice *Yates*. The defendant pleaded the general issue, and specially, that the escape did not happen within one year next before the commencement of the suit, with notice of evidence to be given at the trial, that if *W*. did escape, &c. it was by the leave and consent of the plaintiffs. There was a replication to the special plea and issue.

The plaintiff gave in evidence, the record of a judgment and execution, in favor of the plaintiffs, against *W. White*, and *W. Church*, returned *February* 26th, 1819, *cepi corpus, &c.*

*A. Lawrence*, a witness, testified, that on *Friday*, the 26th of *February*, 1819, *S. Close*, one of the deputies of the defendant, came to the house of the witness, in *Ridgway*, (a considerable distance from the county gaol,) with *White* in his custody, with a view to engage the witness to be answerable for the appearance of *White*, within a given time, at the gaol. The witness made the engagement, and *White* and the deputy left his house, and the witness, on the next *Sunday*, saw *White*, at large, in *Ridgway*, without any officer. *Close*, the deputy, testified that he went with *H. Ely*, one of the plaintiffs, at his request, to the place of *White's* residence, about forty miles distant; that he left *Ely* at a tavern, and went and served the *ca. sa.*: That *W*. asked if he could not have some indulgence, on account of the distressed situation of his family. The witness answered, that he was not so authorized, but that the plaintiff, *E*. was at the tavern, and they both went to him. *E*. said, that he did not wish to distress *W*. but to prevent him from putting away his property, and was willing to have him indulged two or three days, if it did not injure

*Margin note:* Where a plaintiff in an execution gave to a deputy sheriff, who had the defendant in custody, on a *ca. sa.* a writing, stating that he wished the officer to show the prisoner as much indulgence as could be shown with safety to himself, and without hazarding in any way the debt; *Held*, that the writing being in itself ambiguous, *parol* evidence of the conversation between the plaintiff and the officer, at the time, and of collateral extraneous facts, to ascertain the nature and extent of the indulgence which the officer was to show to the prisoner, was admissible.

If on the trial of a cause, the facts of the case are indisputable, and the judge has doubts as to the law, he may advise the jury to find a verdict, subject to the opinion of the Court, on a case: But if either party should refuse to consent to that course, it seems most proper for the judge to decide the point of law, giving the party against whom he decides, leave to make a case. If the facts are disputable, and there is any thing within the province of the jury to consider, and either party objects to a verdict subject to the opinion of the Court on a case, the course seems to be, for the judge to submit the case to the jury, with such remarks on the law and the facts, as the circumstances of the case may demand.

or hazard the debt ; and if the delay did not give him time to put away his property, he was willing to indulge him. *E.* then gave to the witness, in presence of *W.* the following writing, " Mr. *S. Close,* sir, as you have in custody Dr. *William White,* on a *ca sa.,* *H. Ely,* and *Co.* v. *W. White,* and *H. Church,* we wish you to show him as much indulgence as can be shown, with safety to yourself, and without hazarding in any way the debt. For any indulgence which shall go to hazard the debt, we must consider you as responsible. Yours sincerely, *H. Ely. Oak Orchard, February* 26th, 1819." It appeared that the deputy asked *White* for security, that he would go to gaol on *Monday,* and they went to *Lawrence's* house, as above stated, and *L.* engaged to produce *W.* at *Batavia,* on *Monday* after, and on that day *W.* was there.

*White* testified, that his situation was not altered by the indulgence shown to him: that, at the time of his arrest on the *ca. sa.,* he asked *Ely* if it was essential that he should be taken away immediately, and *Ely* said that it was not necessary. That he remained within the gaol liberties a year and a half; the present suit was brought on the 24th of *February,* 1820.

The plaintiff's counsel objected to any oral testimony of the conversations between *Ely* and *Close,* and between *Ely* and *White,* as it appeared that they had resulted in the writing which had been produced, and the testimony was received, subject to this objection. The jury found a verdict for the plaintiffs, for the amount of their debt, 712 dollars and 27 cents, and for 22 dollars and 85 cents damages, subject to the opinion of the Court, on a case.

The defendant's counsel objected to the verdict being taken, subject to the opinion of the Court, and particularly to any verdict for interest. The amount of the interest was proved by a witness, who was, afterwards, proved to be incompetent.

*E. Clarke,* for the plaintiff, contended that an *escape* had been fully proved, for which the defendant was clearly liable. He cited, *Palmer* v. *Hatch,* 9 *Johns. Rep.* 329. *Stackford* v. *Austin,* 14 *East,* 468. and *Bonafous* v. *Walker,* 2 *Term. Rep.* 126.

*J. C. Spencer,* contra, stated, as a preliminary objection, that the verdict had been taken by the express direction of the judge, subject to the opinion of the Court, without the consent of the defendant's counsel. That whether the escape was with the consent of the plaintiffs, was a question of fact, as to the intent and meaning of the writing given by *Ely* to the deputy, and ought to have been left to the jury. Jurors are to try the fact, and judges are to decide the law arising from the fact. It is the undoubted right of the jury to find a general or special verdict. They are to weigh all the evidence, oral or written; and it is not merely a trial by witnesses, but by *jury.* *Co. Litt.* 226. *b.* 228. *a. Hale's. Hist. C. L.* ch. 12. sec. 11.

As to the merits of the case; he contended, 1. That it was competent to the plaintiff to prove the conversation between *Ely,* one of the plaintiffs, and the deputy sheriff, at the time the writing was delivered to the deputy, as a part of the *res gesta,* it being all one transaction. The general rule as to the admissibility of parol evidence to explain written instruments, does not apply to this case. *Phillips,* (*on Evid.* 443.) who has collected the cases on the subject, and stated the rule and distinctions with clearness, says, that " though an ambiguity apparent on the face of a written instrument, cannot be explained by extrinsic evidence; yet, where a question arises as to the general intention of the parties, concerning which the instrument is not decisive, proof of independent facts collateral to the instrument may be properly admitted." Parol evidence is always admissible to show fraud. (8 *Term Rep.* 379. 14 *Vesey,* 170. 1 *Johns. Cases,* 22. 5 *Johns. Rep.* 68. 14 *Johns. Rep.* 210. 1 *Gallis's Rep.* 170. 1 *Johns. Rep.* 528. 2 *Caines' Rep.* 202. 5 *Wheat. Rep.* 326. 7 *Vesey,* 508. 2 *Vesey,* 375. *Peake's Evid.* 318. 3d ed.)

2. But the writing, in itself, shows such an interference on the part of the plaintiffs, as must subject them to all the consequences. The indulgence shown to *W.* was manifestly produced by this writing; and if it was not the intention of *Ely,* that the deputy should indulge the prisoner, it was an artful mode of leading the sheriff into a situation that might render him liable; and the Court will not allow

a party to avail himself of a fact, produced by his own artifice.

3. The verdict includes *interest* on the debt, to which the plaintiffs were not entitled ; and we object to any alteration of the verdict in this respect.

SPENCER, Ch. J. delivered the opinion of the Court. If it is meant that the defendant's counsel, by objecting to the verdict being taken, subject to the opinion of the Court, insisted on his right to address the jury, and on their right to deliberate on the evidence, (which I think is fairly implied in the objection,) then it becomes necessary to inquire, what is, and ought to be, the course of proceeding at the circuit. If the facts in a cause are indisputable, and the Judge either has doubts on the point of law, or wishes to have it considered more deliberately, I can see no objection to his advising the jury to find a verdict for the plaintiff, or defendant, subject to the opinion of the Court. In such a case, if either party refused consent, I should consider it advisable to decide the point of law, giving the party against whom the decision was made, an opportunity to make a case. If the facts were disputable, or if there was any thing within the province of the jury to consider of, the course would be, if either party objected to a case subject to the opinion of the Court, to submit the case to the jury, with such remarks on the law and facts, as were called for by the circumstances of the case.

In this case, the facts relied on by the plaintiffs, to prove an escape, were not disputed. The validity of the defence was in question only ; and if it depended merely on the writing given by *H. Ely,* whether he authorized the deputy to let *White* go at large for a limited period, the construction of the object and intent of the paper writing, would be matter of law for the decision of the Judge at the Circuit, and, ultimately, for the Court ; but if the antecedent and accompanying facts were to be taken into consideration, in deciding the import and meaning of the writing, I should then consider it a matter proper to be submitted to the jury. I should, however, distinguish between cases in which a right to property arising *ex contractu,* was in dispute, and cases where

a penalty was sought to be recovered, *ex delicto;* in the latter cases, I should refer the whole matter, with my opinion on the law and facts, to the jury. The present is a case of the latter description ; and I should not, therefore, have directed a verdict subject to the opinion of the Court, against the expressed wishes of the defendant's counsel. My reasons for the distinction to which I have referred, proceeds on the ground that it is a case *stricti juris;* and should the defendant obtain a verdict, and the action appear to be a hard and unconscientious one, the Court would scarcely grant a new trial, though it might be against evidence.

The first inquiry on the merits of the case, depends on the competency of the parol evidence, as explanatory of the circumstances under which the writing was given by *Ely* to the deputy, *Close.*

It appears to be good law, that though an ambiguity is apparent on the face of a written instrument, it cannot be explained by extrinsic evidence ; yet, where a question arises as to the general intention of the parties, concerning which the instrument is not decisive, proof of independent facts, collateral to the instrument, may be properly admitted. (*Phillips on Evid.* 443, 444.) In the case of the *King* v. *The Inhabitants of Laindon,* (8 *Term Rep.* 379.) by the opinion of all the Judges, parol evidence was held admissible, to show the intention of the parties to a contract, by the ascertainment of a fact collateral to the written instrument, it being in some measure equivocal. *Peake (on Evid.* 116.) says, no evidence *of an expressed intention* can be received to explain an ambiguity on the face of the instrument, and thereby to make that valid, which, of itself, would not avail; yet, that, in other cases, both species of ambiguity are open to explanation by parol evidence ; and that, even in the case of a will, where the testator makes use of terms of equivocal import, though his declarations are not admissible, yet the circumstances of his family and fortune may be proved and taken into consideration, in order the better to enable a Court of justice to put a construction upon his words. In *Cole* v. *Wendel,* (8 *Johns. Rep.* 118.) where the written contract was to pay five per cent. advance on sixty shares in the *Hudson Bank,* the doubt was,

whether this advance was on ten dollars then paid in upon the shares, or on the nominal amount of the shares, they being 50 dollars each. It was held, that the terms of the contract were equivocal, and that, on the strictest principles, the circumstances of the case might be proved, and taken into consideration, in determining how the five per cent. advance was to be calculated. The same principle was recognized by the Supreme Court of the *United States*, in *The Mechanics' Bank* v. *Bank of Columbia*, (5 *Wheat. Rep.* 326.)

I have no doubt, that the writing in this case is, *per se*, of equivocal import. It certainly does mean, that the deputy should grant indulgence to *White*. What kind of indulgence, is the only doubt. It was to be of that nature, that should not hazard the plaintiffs' debt; for any indulgence of that kind, they would consider the deputy responsible. Now, to ascertain the kind of indulgence with respect to which the writing is equivocal, and that might be shown by the deputy to *White*, on the principles of the cases referred to, we have a right, in order to ascertain the intention of the parties to the writing, to inquire into collateral and extraneous facts. These facts are, that *White* was arrested on the *ca. sa.*, forty miles from *Batavia*, where the gaol is, and that he waited two or three days, on account of the state of his family, to prepare to go to gaol. These facts do not contradict the writing, but are essential to a right understanding of its import and meaning. The wish expressed, that as much indulgence might be shown to *White*, as could be done with safety to the sheriff, without hazarding, in any way, the debt, is susceptible of but one construction; that the sheriff should guard himself against *White's* absconding, and that the plaintiff's situation, in relation to their debt, should not be hazarded by any act of *White*, in disposing of his property. It is fairly inferrable from the case, that *H. Ely* was present, and fully knew, that in consequence of the writing he gave, the deputy entered into the arrangement with *White*, that he should appear on the ensuing *Monday*, at *Batavia*. It appears that the plaintiffs' debt was not in the least impaired by the indulgence given to *White*; that he remained in gaol for eigh-

teen months, on the plaintiffs' execution; and that they never thought of suing the sheriff until almost a year afterwards. Under these circumstances, the case ought to have been submitted to the jury on the facts, for them to decide on the effect and import of the writing connected with these collateral facts, and whether greater indulgence was shown to *White* than was intended by the writing. There must be a new trial, with costs to abide the event of the suit.