## BROWN *against* BROWN.

Where the defendant, who kept house, contracted with the plaintiff, a single man, in consideration of a deed of sundry pieces of land, to furnish to the plaintiff, at his, the defendant's, charge and expense, a good and comfortable support through life; and immediately after the execution of the contract, the plaintiff became an inmate of the defendant's family, and there received his support, for fifteen months; it was held, that the defen-

*Fairfield,*
*June,*
1822.

Brown
*v.*
Brown.

dant, by such contract, assumed a personal trust, and that he was not bound to furnish the stipulated support at any other place than his own dwelling-house.

This was an action on a promissory note, in these words : " Value received, I promise to pay *Squire Brown* two thousand dollars. *July* 9th, 1818. The condition of this note is such, that whereas the said *Squire* has, this day, given to the subscriber a deed of sundry pieces of land, for which the subscriber has contracted to support said *Squire* through life : Now, if the subscriber shall, at his own charge and expense, furnish to the said *Squire* a good and comfortable support through life, then this note to be void ; and when he shall fail so to do, then to become payable.

<i>Peter Brown.</i>"

The defendant, having prayed oyer of the note, pleaded as follows : " That at the time of giving and executing said note, and at all times since, the defendant hath lived in *Stamford,* and kept house ; and the plaintiff, at said time, was, and at all times since, hath continued to be, single and unmarried ; and at the time of the execution of said note, he the plaintiff came to live with the defendant, at his said dwelling-house in said *Stamford ;* and the defendant, then and there, and at all times thereafter, for about fifteen months, and until the plaintiff left the dwelling-house of the defendant, as hereafter stated, did support the plaintiff, at his, the defendant's, own charge and expense, and did render the plaintiff a good and comfortable support, and furnished the plaintiff with all things necessary for his good and comfortable support, until on or about the 9th of *October,* 1819, when the plaintiff, without any cause, and against the mind and will of the defendant, left his dwelling-house, and hath ever since continued abroad, and refused to live with the defendant, without any just or reasonable cause, and hath refused, during the whole of said absence, to receive from the defendant, at his said dwelling-house, a good and comfortable support : and the defendant hath, at all times, stood ready and offered the plaintiff, at his the defendant's own charge and expense, to render to the plaintiff, at his, the defendant's, said dwelling-house, a good and comfortable support ; and the defendant, at all times since the plaintiff so left his dwelling-house as aforesaid, would have supported the plaintiff, in manner aforesaid, if the plaintiff would have lived with the defendant, at his said dwelling-house, and there re-

ceived the same. So the defendant says, he hath kept and performed," &c.

To this plea there was a demurrer; and the question of law arising thereon was reserved for the advice of all the Judges.

*Sherman* and *C. Hawley*, for the plaintiff. They cited *Wilder* v. *Whittemore*, 15 *Mass. Rep.* 262.

*Daggett* and *N. Smith*, for the defendant.

HOSMER, Ch. J. The action of the plaintiff is founded on the defendant's contract, made in consideration of a deed of sundry pieces of land, promising " at his own charge and expense, to furnish the said *Squire* a good and comfortable support through life." The defendant pleads in his defence, a refusal, on the part of the plaintiff, to be supported at the dwelling-house of the defendant, which he has ever been ready and offered to perform.

No local usage is stated, giving a construction to the above agreement; and the fact that there exists one, cannot be presumed. The case must be determined by the general law regarding contracts; and the words, the subject matter, and the effects and consequences of the construction, will conduct the court to the legal result. What did the parties intend, is the main object of enquiry; and to solve this question, I will first recur to the words of the contract.

1. This is the primary and most important sign, in the investigation of the meaning of the parties; for this purpose, it is, that language is used; and guided by its popular intendment, we have the surest clue to unravel the intention. I am led to this remark, by reason of the manner, in which the words, in the argument, were undervalued, and nice subtle disquisition substituted for that plain meaning, which the language of the contract expresses. A promise to furnish support, abstracted from the manner and place in which it is to be given, is an engagement in the most general form possible. To select a particular mode, in which the contract shall be executed, otherwise than by the payment of a competent sum; or to subjoin a local residence, in which the support shall be rendered; in my judgment, is to add a new and unauthorized term to the agreement. It is doing that which the parties intentionally omitted, and restricting a general engagement, by the superinduction of a qualification. The words, " I

promise to furnish you a good and comfortable support," taken abstractedly, by a common figure of speech universally understood, are equivalent to an engagement to pay a competent sum of money for that purpose. The using of one word for another, on account of some relation or coherence between them ; for example, putting the effect for the cause, as *grey hairs* for *old age* ; is one of the most usual metonymies, introduced into common conversation. I readily admit, that the subject matter of a contract, as well as other facts, will show, that the intention of the parties is not conveyed, by the precise meaning of the words used ; a consideration to which I shall, by and by, attend. I understand the words of the defendant as containing an engagement, to pay to the plaintiff a competent sum for a comfortable support ; and thus, by furnishing the means, to attain the end proposed.

Admitting, however, that this construction of the contract is not well founded ; it is of no avail to the defendant, if another exposition of the words is correct ; that is, that he is to supply the plaintiff with board, in a comfortable manner, *where he shall choose to live.* This is the construction given by the supreme court of *Massachusetts*, in *Wilder* v. *Whittemore*, 15 *Mass. Rep.* 262. to an agreement expressed in terms very similar to the one under discussion. One *Aaron Haven* granted, by deed, the premises demanded, by the plaintiff, in a writ of entry, with a condition subjoined, to maintain the demandant and her husband, during their respective lives. For the breach of this contract the action was brought against the defendant, who was in possession of the land mortgaged ; and in defence, he pleaded in bar, that one *Houghton*, an assignee of the mortgagor, had offered to support the plaintiff, *at his house.* " It is clear" (say the court,) " that the plea in bar does not shew a performance of the condition of the deed ; for it is no where stipulated therein, that the mortgagees shall be obliged to receive their support in the house of the mortgagor, or any of his assignees. On the contrary, wherever they choose to live, they have a right to be supported, according to this contract ; so that they do not create needless expense to the mortgagor, or those holding under him." This determination decides negatively, that the mortgagees were not under obligation to take their support in the house of the assignee, or of the mortgagor ; but this is a part of the decision only. It is further adjudged, affirmatively, that they have a right to claim support, by the true construction of the

agreement, if unnecessary expense is not created, *wherever they choose to reside.* I entirely concur in the opinion expressed. The construction, in my judgment, is sound; because it gives effect to the words of the agreement; and considers a general contract as general, and not as restrained by a qualification, neither expressed nor intimated. To limit, in favour of the contractor, the performance of an agreement to a *place,* which expresses no such limitation, gives an interpretation of it in reverse of the established maxim, that agreements are to be construed most strongly against the party, who binds himself to their performance. If there be any ambiguity, in a given case, the obligor, who ought to have expressed himself more perspicuously, must be subjected to the disadvantages of an unfavourable construction.

2. In the subject matter of the defendant's contract, there is nothing to limit the meaning of the words.

That the plaintiff was single and unmarried, at the execution of the note; and that he came to live with the defendant, at his dwelling-house, and resided there fifteen months, avail nothing in the construction of the contract. On the principle I assume, he had right to live where he pleased; and that he pleased, after the agreement made, to take his residence with the defendant, cannot affect the antecedent engagement. How easy would it have been, for the defendant to have subjoined to the contract for support, the words, "at my dwelling-house;" and why was not this most important qualification superadded? It undoubtedly was for his interest, that it should; and it is equally obvious, that it was opposed to the interest of the plaintiff; particularly, as he must lead a life of celibacy, or lose the benefit of his contract. This suggests the reason why it was omitted. A general engagement to furnish support, in a comfortable manner, where the promisee should choose, was of more value, than a stipulation to board the plaintiff at the defendant's dwelling-house. This might always be accomplished, by compact; and if undesirable, by reason of any cause, the plaintiff would be free to elect a place, more conducive to his enjoyment.

3. The effects and consequences of either construction, are not so imperative as to give a decided character to the contract; and yet I am convinced, that the popular meaning of the words of it, is more compatible with the just intention of the parties, than the exposition opposed to them.

The defendant is subjected to no unreasonable hardship, by permitting the language he has used, to define his obligation. Whether he make payment to the plaintiffs, or to the keeper of a boarding-house, for his support, is of no importance to him, if he is not obliged to incur unreasonable expense. On this head, the contract is guarded, with all practicable precision. The defendant has agreed to furnish " a good and comfortable support ;" and this relative expression refers to the age, habits, and other circumstances, by which the plaintiff is distinguished. It is to be such a support, as at the place where the contract was made, is considered as falling within its terms ; for the place where an agreement is executed, always is taken into view, when ascertaining its meaning. It is the extreme boundary of the defendant's obligation, that he pay a sum of money, equivalent with the value of a comfortable support, where the note in suit was made. To this construction of his contract, the defendant can make no reasonable objection ; as it is nothing more, than the result he must have anticipated, and has voluntarily assumed.

On the other hand, the construction insisted on, by the defendant, imposes on the plaintiff a most intolerable hardship. He must be an appurtenance of the defendant—residing where he thinks proper to reside,—and removing with him, wherever he goes, unless, in preference to this subjection, he chooses to renounce all benefit from the contract. If the circumstances are *in equilibrio,* or not so powerful in the defendant's favour, as to make the opposing construction absurd ; they cannot have any effect, in the construction of the agreement. It must be expounded according to the plain meaning of its terms, or most strongly against the defendant ; and even without the aid of the latter principle, I am clear that he has no legal defence against the plaintiff's claim.

I am very desirous of placing the determination on the former ground, as I cannot accede to the principles, on which the defendant has attempted to frustrate a plain engagement.

CHAPMAN, J. was of the same opinion.

PETERS, J. It appears from the pleadings, that on the 9th day of *July*, 1818, the plaintiff conveyed his real estate in *Stamford* to the defendant, who made the note in question, conditioned to be void, if the defendant should, at his own

charge and expense, render to the plaintiff a good and comfortable support through life ; that the plaintiff entered the defendant's house, and there received his support, according to contract, until the 9th day of *October*, 1819, when he abandoned it, and voluntarily continued absent, until the commencement of this suit ; and that the defendant, during said term, was, then and there, able and ready to afford the stipulated support.

Of the *matter* of this support, and the *manner* and *place* of rendering it, the contract is silent ; but from its language, and the situation and conduct of the parties, their object is apparent. Money was not in contemplation ; for the contract is, to " render a good and comfortable support—" *i. e.* such things and such services as the health and comfortable subsistence of the plaintiff, under all the circumstances, might reasonably require. The defendant was a house-keeper, in *Stamford*. The plaintiff was a single man, without a house, or house-hold ; and provided for himself a retreat, for the enjoyment of both, by creating an artificial relation, secured by bond. Upon the execution of the bond, the plaintiff became an inmate of the defendant's family : and there received the stipulated support, fifteen months. This evinces the understanding of the parties, *at the time*. The contract was personal, and originated in mutual confidence. The support was to be rendered, by *the defendant*. Had *he* turned over the plaintiff to strangers, in whom the plaintiff had no confidence ; well might he complain. But he now admits, that he has received " a good and comfortable support," at the hands of the defendant, for fifteen months ; and might have continued so to do, had he not obstinately refused it.

In *Backus* v. *Dudley*, 3 *Conn. Rep.* 568. this court decided, that a town was not obliged to support their poor abroad, who refused to be supported at home. The case of *Wilder* v. *Whittemore*, 15 *Mass. Rep.* 262. is relied on, as supporting a contrary doctrine ; but that case is distinguishable from the present. In that case, the party bound to support, instead of doing it at his own house, turned over the other party to strangers in another town, in violation of the personal trust reposed in him.

I advise that judgment be rendered for the defendant.

BRAINARD and BRISTOL, Js. were of the same opinion.

Plea sufficient.