## ANDREW P. HOTCHKISS *vs.* HORACE S. BARNES.

A guaranty was in these words:—"*Mr. H.*: You can let *D* have what goods he calls for, and I will see that the same are settled for." Held to be a continuing guaranty.

If the words would equally bear either construction, parol evidence would be admissible to show the circumstances, and the construction put upon the contract by the parties at the time by their conduct, to aid in determining its meaning.

The contract of a surety must, like all contracts, be construed according to the intent, and the question is, what is the fair import of its language.

Where a note on time was taken for the goods sold under the guaranty, in accordance with the custom of the seller, who was a wholesale dealer, and the guarantor afterwards, and after the note had been protested for non-payment, agreed to pay it, it was held that he had waived all objection to it.

The act of 1854 prohibits the sale of spirituous liquors and makes void all contracts for payment for liquors sold. By the acts of 1861 and 1863 such contracts are validated. Held, that a guaranty given in 1858 for such goods as D might purchase, was valid and binding on the guarantor, although the goods purchased were spirituous liquors.

ASSUMPSIT, on a guaranty given by the defendant for the payment for goods sold by the plaintiff to one J. L. Day, brought to the superior court in New Haven county. By the bill of particulars it appeared that a large part of the articles sold was spirituous liquors. The defendant pleaded the general issue, with notice that he should claim that he was not liable upon his guaranty for the liquors sold, such sale being prohibited by law. The issue was closed to the court and the case tried before *Phelps, J.* The following facts were found by the court.

On the 2d day of January, 1858, the defendant executed the following writing:—"Fair Haven, January 2nd, 1858. Mr. A. P. Hotchkiss:—*Sir*. You can let Mr. J. L. Day have what goods he calls for, and I will see that the same are settled for. Yours truly, H. S. BARNES." This writing was immediately thereafter delivered to the said Day, who was the defendant's son in law, and by him to the plaintiff, and upon the faith and credit thereof the goods described in the bill of particulars were delivered to Day between the 2d of January, 1858 and the 26th of July, 1859. The plaintiff was a merchant engaged in the wholesale grocery business in the city of New Haven, and Day was a druggist in Fair Haven. The goods purchased were such as he would use in his business. The defendant had due notice of the acceptance of the guaranty by the plaintiff, and during the time while the goods were being furnished to him he was frequently in the plaintiff's store, and had knowledge of the kind of goods Day was purchasing, the extent of the indebtedness therefor, and that the goods were being furnished upon the credit of the guaranty. Shortly before the date of the last item in the bill of particulars the defendant went to the West Indies, where he remained until the next summer, and until after the maturity of the note to be mentioned. On the 30th day of

March, 1860, and during the defendant's absence, and without notice to him, the plaintiff in making up his account with Day, as was his custom with all who traded with him, balanced the account and took Day's note for the balance at three months. On the 30th of May, 1860, Day, who up to that time had been carrying on the druggist business, disappeared with all the goods in his store and became utterly insolvent. On the same day the plaintiff caused to be left at the residence of the defendant written notice to the effect that Day had become insolvent and that he should look to the defendant for the payment of his indebtedness to him ; and upon the maturity and non-payment of the note, he caused a like notice, and to the same effect, to be left at the defendant's residence. Shortly after the maturity of the note, and upon the return of the defendant from the West Indies, the plaintiff presented the note to him and he promised to pay it. On the 13th of August, 1860, another demand was made upon him by the plaintiff, in reply to which he said that it was all right and that he would pay it as soon as he conveniently could. A third demand was made by the plaintiff on the 6th of February, 1861, in reply to which the defendant said that he would pay it in cash in two months from that time.

The plaintiff objected to evidence as to the giving of the note by Day, as not admissible under the plea and notice ; also to all the other evidence, so far as it was offered for the purpose of affecting the construction of the guaranty, as tending to vary or contradict a written instrument ; but the court admitted the evidence. The defendant also claimed that the guaranty was not a continuing one, and that he was not liable upon it for any goods sold after the first sale, which took place on the 2d day of January, 1858 ; also that he was not liable upon the guaranty for such part of the goods sold as consisted of spirituous liquors ; but the court overruled both claims, and rendered judgment for the whole amount of his claim.

The defendant moved for a new trial for error in the rulings of the court, and also filed a motion in error.

*Bronson* and *H. Stoddard*, in support of the motions.

1. The guaranty is not a continuing one.   1st. A guaranty will not be so construed unless its language clearly indicates that such was the intention of the parties.   *White* v. *Reed*, 15 Conn., 457.   There is nothing in the words used that indicates that the object of the guaranty was to aid Day in any business which he was about to carry on, and to give him a standing credit in that business.   *Rapelye* v. *Bailey*, 5 Conn., 149; *Hall* v. *Rand*, 8 id., 560; *Lewis* v. *Dwight*, 10 id., 95.   The language of the guaranty is precise and clear, and points to but one transaction.   2d. Parol evidence as to the circumstances, so far as the same might tend to vary or contradict the guaranty, was inadmissible.   Although the circumstances could perhaps be shown, they could never have the effect of contradicting the plain meaning of an instrument. And the conduct of the defendant can not operate to estop him from denying that the guaranty was a continuing one. The construction put upon it by the plaintiff would have been the same if he had never seen the defendant.

2. The note given by Day and received by the plaintiff discharged the guarantor.   1st. The note was taken in the absence of the defendant and without his consent.   Before it came due Day with his property disappeared and became insolvent.   The defendant did not return to this country until some time after the insolvency of Day.   The agreement for extension of time was valid and binding, and the time definitely and precisely fixed.   1 Parsons on Contracts, 509; *Huse* v. *Alexander*, 2 Met., 157.   2d. The promise of the defendant after his return from the West Indies to pay the debt is without consideration and void.   It does not appear that the guarantor had any knowledge of the extension of time when he made the promises.   The promises are also void for reasons hereafter set forth.   And this defense is admissible under the plea and notice.

3. The guaranty did not authorize the plaintiff to sell to Day the liquors specified in the bill of particulars.   The true interpretation is that the plaintiff could let Day have what he called for, provided he furnished him nothing contrary to law.

2 Parsons on Contracts, 12. But the plaintiff claims that the act of 1863 renders the sale of the liquors valid and binding on the defendant. That act provides that no contract shall be rendered invalid or illegal by the provisions of the act of 1854. But this contract, as we construe it, does not come within the letter of the statute, as it never was an illegal or invalid contract. But the statute is not retrospective, and does not relate back to a contract made in 1858. If a statute is not clearly retrospective, the court will not by construction give it a retrospective operation; every presumption is against. it. *Perkins* v. *Perkins,* 7 Conn., 558; *Plumb* v. *Sawjer,* 21 id., 351. When a statute is clearly retrospective to a certain extent and for a certain purpose, the court will not by construction give it a retroactive operation to any greater extent or for any other purpose. *Thames Manufacturing Co.* v. *Lathrop,* 7 Conn., 550.

*Beach* and *J. L. Platt,* contra.

1. The guaranty was a continuing one and not exhausted by the first item of goods sold. 1st. The intention of the parties that the contract should be a continuing one is inherent in the writing itself. *Rapelye* v. *Bailey,* 5 Conn., 149; *White* v. *Reed,* 15 id., 457; *Michigan State Bank* v. *Peck,* 28 Verm., 200; *Rindge* v. *Judson,* 24 N. York, 64. 2d. Such intention is confirmed " by the situation of the parties at the time, the circumstances under which the writing was made, and the subject matter to be regulated by it;" and these were rightfully proved by parol testimony. *Brown* v. *Slater,* 16 Conn., 192; *Baldwin* v. *Carter,* 17 id., 201; *Bailey* v. *Larchar,* 5 R. Isl., 530; *Merrill* v. *Gore,* 29 Maine, 346; 1 Green. Ev., § 288. 3d. While these goods were being sold the defendant knew of and acquiesced in such sales as being made upon the faith of this writing as a continuing guaranty. He can not now deny what he then induced the plaintiff to believe. *East Haddam Bank* v. *Shailor,* 20 Conn., 21; *Cowles* v. *Bacon,* 21 id., 451; *Smith* v. *Smith,* 30 id., 111.

2. The defendant's liability is not affected by the plaintiff's

accepting a promissory note from Day at three months' time for the balance of the account. 1st. This did not operate as a novation of, or affect any change in the original debt. The account was averaged and the note given and received in the usual course of business. 2d. If the note was a novation, the defendant waived this claim of defense by his repeated promises to pay the note after its maturity. 1 Parsons on Contracts, 506 ; *Fowler* v. *Brooks*, 13 N. Hamp., 245; *Peck* v. *Barney*, 13 Verm., 93 ; *White* v. *Reed*, 15 Conn., 463. 3d. This defense was not admissible under the general issue ; and no such claim of avoidance or discharge is contained in the defendant's notice. Gen. Statutes, p. 23.

3. There is nothing in the nature of the goods sold which releases the defendant from liability under his contract. Under the statute existing at the time the goods were sold, neither the contract of sale between the plaintiff and Day, nor the contract of guaranty between the plaintiff and defendant, could have been enforced. Statutes, Comp. of 1854, p. 832, § 27. In 1861 this 27th section was repealed, and in 1863 the legislature further enacted, that nothing contained in the act of 1854 should " impair in any way the validity of any contract already made or which may hereafter be made ; nor shall said act render such contracts illegal." Acts of 1861, p. 55 ; Acts of 1863, p. 16. In the revision of 1866 these two acts were condensed into the following :—" No contract shall be rendered invalid or illegal by the provisions of this chapter." Gen. Statutes, 705, sec. 43. It must be conceded that these subsequent enactments would enable the plaintiff to enforce the contract of sale against Day, the purchaser of the goods. And it is a general rule that the liability of a guarantor is measured by that of his principal, and if the contract of sale is to be treated as valid the contract of guaranty upon the faith of which the sale was made is equally valid. 1 Parsons on Contracts, 494.

4. The defendant relies upon the act of 1854 as controlling the construction of his contract, and insists that his guaranty ought not to be construed as intending to cover goods which could not under the then existing statutes be lawfully sold.

But whatever merit such a claim, based as it is upon presumed intention, might otherwise have, is extinguished by the actual knowledge by the defendant of the sale of these goods and his acquiescence in their purchase and sale upon the faith of his guaranty. And such sale being *malum prohibitum* and not *malum in se*, the defendant assumed the same risk in his contract of guaranty, that the prohibition might be removed and the contract validated, that Day did in his contract of purchase. There is no more equity or propriety in the one looking to the prohibitory law to construe his contract in evasion of his liability, than in the other doing it.

PARK, J. This suit is based upon the following letter of credit addressed by the defendant to the plaintiff:—

"Fair Haven, January 2, 1858.

"Mr. A. P. Hotchkiss:—Sir. You can let Mr. J. L. Day have what goods he calls for and I will see that the same are settled for.          Yours truly,          H. S. BARNES."

The first question in controversy between the parties is, whether this instrument is a continuing guaranty or whether it applies only to the first item in the plaintiff's bill.

The books are full of reported cases upon the subject of commercial guaranties. The decisions are not uniform in the conclusions arrived at, from the fact that no two cases can be found precisely alike, and different courts have adopted different rules of construction. In some of them a rigid rule has been applied to the guarantors, while in others a construction has been given most favorable to them. It was well said by Parke, J., in the case of *Hargreave* v. *Smee*, 6 Bingham, 244, "that all these cases must be decided each on its own ground, and therefore it is useless to refer to the decisions except for any principle which may be incidentally laid down in them." In relation to the rule that should govern courts in construing contracts of this description, the weight of authority, gathered from all the cases upon this subject, is in conformity to the rule of construction adopted by our own court, that the contract of a surety must be construed according to the intent of the par-

ties. In the case of *Hall* v. *Rand,* 8 Conn., 560, Ch. J. Hosmer says:—" The real inquiry is, what was the intention of the defendant, and to ascertain this his words must be taken in their plain, popular and obvious sense. That is the true meaning of the contract which readily presents itself to a plain man of common understanding on reading it attentively and impartially, and not that which is elaborated with effort." In the case of *Lewis* v. *Dwight,* 10 Conn., 100, Ch. J. Williams says:—" The contract of a surety, must like all contracts, be construed according to the intent, and the question is, what is the fair import of the language of the guaranty." In the case of *White* v. *Reed,* 15 Conn., 457, Hinman, J., adopts the same rule of construction. This rule may also be found in *Hargreave* v. *Smee,* supra, *Lee* v. *Dick,* 10 Peters, 482, and 2 Kent Com., 557.

Applying this rule to the case in question, would the fair import of the language used in this guaranty be satisfied by the purchase of a few articles of merchandise at one time ? Suppose Day had casually passed the store of the plaintiff immediately after the guaranty had been given, and recollecting that he needed an article for a particular purpose, an article not usually kept by druggists of a limited business, had procured it, would the liability of the defendant be exhausted by the purchase of the article ?

The language of the guaranty is, you can let Day have what goods he calls for. There is no limitation of the quantity or kind of goods that he may purchase. There is no limitation of the amount in value that the plaintiff may sell. The language is general—" what goods he calls for." The guaranty shows that the defendant was willing to trust Day to any amount, or else some limitation would have been made in the amount he might purchase. Even the defendant's construction placed it in the power of Day to ruin the defendant in a single transaction. Now it is unreasonable to suppose that the defendant intended to limit Day to a single purchase of goods under such circumstances. Had he intended to limit his authority, we should look for a limitation in the amount rather than in the number of sales.

We are therefore inclined to think that a fair construction of this guaranty shows it to be a continuing one. But if we are wrong in this, the only other result to which the case tends is equally unfavorable to the defendant. It must be conceded that the language of this guaranty accords as well with sales made from time to time as it does with the first purchase of goods. Now if it is capable of either construction, and both are in harmony with the language used, then the guaranty possesses a latent ambiguity, and where that is the case the extrinsic circumstances may always be shown in order to ascertain which construction the parties intended the instrument to have. *Brown* v. *Brown*, 4 Conn., 269 ; *Lines* v. *Flagg*, id., 581 ; *Strong* v. *Benedict*, 5 id., 210 ; *Brown* v. *Slater*, 16 id., 192 ; *Baldwin* v. *Carter*, 17 id., 201 ; *Peisch* v. *Dickson*, 1 Mason, 9 ; *The King* v. *Inhabitants of Laindon*, 8 T. R., 379 ; *Ely* v. *Adams*, 19 Johns., 313 ; *Bailey* v. *Larchar*, 5 R. Isl., 530 ; 1 Greenl. Ev., § 288 ; 1 Swift Dig., 182.

Should we consider the guaranty aided by these circumstances, we can have no doubt that the parties intended the guaranty to be a continuing one.

The plaintiff was a merchant engaged in the wholesale grocery business in the city of New Haven and Day was a druggist in the village of Fair Haven. The goods purchased were adapted to the line of business Day was pursuing. The defendant was frequently in the plaintiff's store during all the time the goods were being delivered, and had knowledge of the kind of goods purchased, and the amount thereof, together with the fact that they were furnished upon the credit of his guaranty. He made no complaint at any time, and, after the indebtedness had fully accrued, promised to pay the amount on three different occasions.

It is difficult to see what could more satisfactorily show the construction the parties put upon the guaranty. The plaintiff sold the goods upon the credit of the guaranty. This shows in what sense he understood the contract. The defendant knew of the purchases, and made no complaint, and afterwards repeatedly promised to pay the amount. This shows that he regarded the guaranty as a continuing one.

Both parties then understood the contract in the same sense, and such must be its construction.

The defendant further claims that most of the goods purchased by Day were spirituous and intoxicating liquors; that they were sold contrary to the provisions of the statute law of the state for the suppression of intemperance; and that although the legislature in 1861 repealed the sections of the act making void all sales of such liquors, and in 1863 passed an act legalizing all such sales that had been or should thereafter be made, still the act does not reach or affect in any way the contract of guaranty. The claim is, that the contract should be construed as extending only to such sales as the plaintiff might lawfully make. The plaintiff could not lawfully sell spirituous and intoxicating liquors, therefore such sales were never guarantied by the defendant, and consequently the act legalizing the sales would not extend the guaranty to transactions not embraced by it originally.

This is an ingenious argument, but there is fallacy in the premises it assumes. It assumes that the contract should be construed as though it read, " you can let Day have what goods he calls for, *except spirituous and intoxicating liquors.*" If such had been the language of the guaranty, or if such should be its interpretation, then in either case the claim of the defendant would be sound. No doubt the law presumes every man to act in accordance with law till the contrary appears, and his contracts should be construed upon that presumption in ordinary cases. But such presumptions of law must give way to proof of a contrary character. What would the defendant say if the language of the guaranty was, you can let Day have what goods he calls for, including spirituous and intoxicating liquors? Then, no doubt, the act validating the sale would validate the contract.

Now, under the circumstances of the case the guaranty must be construed as including originally spirituous and intoxicating liquors. The plaintiff so understood it from the fact that he sold them upon the credit of the guaranty. The defendant so regarded it, from the fact that he knew when the sales were made that the goods were spirituous and in-

toxicating liquors and were sold upon his credit. He made no complaint at the time, and afterwards promised again and again to pay the amount. It is clear that he intended originally that the guaranty should extend to the sale of such liquors. There is nothing in the language of the guaranty that excludes them. It applies as much to liquors of this description as it does to goods that could be lawfully sold.

The act of 1863 provides " that nothing contained in the act entitled an act for the suppression of intemperance passed May session 1854, shall impair in any way the validity of any contract already made, or which shall hereafter be made ; nor shall said act render such contracts illegal." Public Acts 1863, p. 16.

This act is as extensive to restore legality to contracts as the act of 1854 was to render them illegal ; and it applies as much to this guaranty, which was void by the statute of 1854, as it does to the contract of sale by the plaintiff to Day. If the one was legalized, so also was the other.

It is said by the defendant that the revised statutes of 1866 so changed the act of 1863 that it no longer has a retroactive effect. But the statute of 1863 legalized the guaranty as soon as it was passed, and the revised statutes found it a valid contract, consequently no matter whether the act in its present form is retrospective or not.

The defendant further claims that the note given by Day discharged the guaranty. It may well be questioned whether this defence is admissible under the pleadings in the case, but, if it can be made, it is clear from the facts found by the court that the defendant waived all objection to the change made by giving the note. He had full knowledge of the dealings of the parties during all the time that the goods were delivered and afterwards on three different occasions promised to pay the note when presented to him.

There is no error in the judgment complained of, and no ground for a new trial.

In this opinion the other judges concurred.