HARVARD LAW SCHOOL LIBRARY

JAMES COLLINS AND OTHERS *vs.* JERRY DRISCOLL.

Land was conveyed "with the privilege of deepening the ditch leading from the premises, to drain the same over the grantor's land, as deep as the grantees may desire." The ditch then existing was six feet wide at the top and two at the bottom and six feet deep. To deepen it required either curbing or widening the ditch at the top, which latter was the usual mode of ditching swamp lands. Held, 1. That parol evidence was admissible as to the land being sold as a peat bed, which required thorough drainage, and as to the usual mode of digging ditches in swamp lands. 2. That the grantor must be understood to have intended the usual mode of deepening such a ditch, and that the privilege was granted of widening the ditch at the top so far as was necessary in deepening it.

WRIT of error, brought to the superior court in New Haven county from the judgment of a justice of the peace, in an action of trespass *quare clausum fregit* brought by the defendant in error against the plaintiffs in error. By the bill of exceptions allowed by the justice it appeared that the acts charged as a trespass were committed by the original defendants as the servants of M. Rosenbaum and others, to whom the original plaintiff, Driscoll, had conveyed certain land adjoining that on which the acts were committed, by a deed which granted also the privilege of deepening a ditch already existing, which ran from the land conveyed across that of the grantor, and that the acts complained of were done in deepening the ditch. The clause in the deed was as follows:—
" Do give, grant, bargain, sell and confirm unto the said grantees, one certain lot of land situated in said town of Sey-

mour, and bounded westerly by highway, northerly and easterly by lands of Daniel Crowley, and southerly by lands of grantor; together with the privilege of deepening the ditch leading from the above premises, to drain the same over my land, as deep as they may desire." It further appeared by the bill of exceptions that the ditch, at the time the deed was executed, was six feet wide at the top and two at the bottom and six feet deep; that the land was conveyed for the purpose of being worked as a peat bed, and that thorough draining was necessary for this purpose; that it was necessary for such drainage that the ditch should be deepened to the depth of twelve feet; that the ditch could not be deepened without widening it at the top unless by curbing; that deepening by widening at the top was the usual mode of ditching swamp lands; and that the defendants had widened it only to such a reasonable extent as was necessary in deepening it. The plaintiff claimed that the deed granted only the right to deepen the ditch and not to widen it, and the justice so held and rendered judgment for the plaintiff.

Upon the writ of error the superior court, (*Phelps, J.,*) reversed the judgment of the justice, and the defendant in error, the original plaintiff, brought the record before this court by a motion in error.

*H. B. Munson,* for the original plaintiff.

The deed gave the grantees the simple privilege of " deepening" the ditch in question. The language is clear, explicit and unequivocal, and the extrinsic facts brought in by parol evidence, that the land granted was peat land, and as to the custom of ditching swamp lands and the necessity of curbing, can have no effect to enlarge or vary the explicit language of the deed. The words giving " the privilege of deepening the ditch " to an unlimited depth, cannot be strained to confer the right to widen to a proportionate or unlimited width. The construction of words should be according to the literal sense. 1 Swift Dig., 223, 229. It is only where the language is equivocal or doubtful that the situation of the parties or the surrounding circumstances may be shown. *Strong* v. *Bene-*

*dict,* 5 Conn., 210; *Brown* v. *Slater,* 16 id., 195. The circumstances confirm the literal construction. Simply deepening the ditch would not injure the plaintiff's meadow, widening would. Again, no man would convey an unlimited right to deepen and widen also, for this would be more than equivalent to conveying all his land. The language conferring the privilege of deepening the ditch is equivalent to an express provision that it shall not be otherwise disturbed.

*Wooster,* for the original defendants.

A deed of doubtful construction must be taken most strongly against the grantor. *Marshall* v. *Niles,* 8 Conn., 374; *Bushnell* v. *Proprietors of Ore Bed,* 31 id., 157. The grantor is presumed to intend to convey, so far as it is in his possession, whatever is necessary to the reasonable enjoyment of the thing conveyed. 2 Hilliard's Abr., 328, sec. 33. A grant of a coal mine with the right of sinking pits, gives the right to place on the land such machinery to drain the mines and draw the coal as is usual in the working of mines, together with an engine house and a pond to supply the engine, &c. 2 Washb. Real Prop., 624; *Bardwell* v. *Ames,* 22 Pick., 358; *Green* v. *Putnam,* 8 Cush., 21, 29. The grant of a piece of land to build a mill dam upon, grants the right, if necessary, to place a part of the dam upon the adjoining land of the grantor. 2 Washb. Real Prop., 624; *Dryden* v. *Jepherson,* 18 Pick., 385. Where power is granted by deed to do a particular thing upon land, the power is granted to do that thing in the usual and ordinary way. Driscoll granted and intended to grant the right to deepen the ditch so as to drain the land granted, and if he intended to prohibit the grantees from deepening it in the usual way, and to force them to resort to unusual and artificial works, he should have so limited them in his grant.

PARK, J. At the time the deed was executed the ditch in question was six feet deep and six feet wide at the top, with sides sloping to two feet wide at the bottom. The deed confers authority upon the plaintiffs to deepen the ditch as deep

as the plaintiffs may desire, and the question is in what sense the parties understood this expression.

The defendant dug the ditch for the purpose of draining the premises conveyed, which was low swampy land adapted to the production of peat for fuel. The land was sold by the defendant and purchased by the plaintiffs for the purpose of carrying on the business of preparing the peat for market. Such business requires that the land should be thoroughly drained.

The parties to the deed considered that the ditch already existing might be found incapable of draining the land to the extent desired, and hence the clause in question was inserted in the deed.

The defendant contends that the clause should be construed as granting the right to deepen the ditch, but as conferring no authority upon the plaintiffs to widen it; that the expression is equivalent to an express prohibition against widening the ditch, however necessary it might be found to be in deepening it. This claim of the defendant would render the clause inoperative, for the ditch was but two feet wide at the bottom, and it is manifest that at that width it could not be lowered to any practical effect even by curbing. Should the sloping sides be cut down perpendicularly from the top and the whole excavation be deepened, the original ditch would be widened as well as deepened, for it cannot be said that the ditch was six feet wide, the width of the top, any more than it could be said that it was but two feet wide, the width of the bottom. Hence, if the defendant's construction is correct, he has granted a privilege of no practical benefit to the plaintiffs, and contrary to the manifest intent of the parties.

The plaintiffs claim that the defendant granted the right to deepen the ditch in the usual mode in similar cases, which consists in sloping the sides to an extent necessary to prevent their caving in, and render them safe from the ordinary flow of the water through the ditch.

They claim that the defendant himself has furnished a practical illustration of the mode by the ditch which he con-

structed and which he authorised them to deepen; that he said to them substantially in his deed, you may deepen the ditch already existing, so that the ditch when completed shall have a form similar to the one deepened.

The controversy in the case has reference to the mode of deepening the ditch. Some mode must have been understood by the parties, for it is easy to see that the ditch could not have been deepened without resort to some mode of protecting the sides. Either mode claimed is in accordance with the language of the deed, for the deed does not in terms forbid the widening of the ditch to an extent necessary to deepen it. If it was practicable to deepen the ditch by curbing, it would be necessary for the plaintiffs to cart the materials for the purpose upon the defendant's land. That would be a trespass unless the plaintiffs were protected by their deed, but the deed is silent in granting permission so far as its language is concerned. One mode or the other of deepening the ditch must therefore be granted by implication, for it is a rule of construction that when a right is granted, whatever is necessary for the reasonable enjoyment of the right, and without which the right would be useless, is granted by implication, if the grantor possesses the means to make it beneficial. Thus where a man grants a tract of land in the middle of his field, the right of ingress and egress arises by implication. So a grant of a coal mine with the right of sinking pits, confers the right to place upon the land such machinery to drain the mine and draw the coal as is usual in the working of similar mines. 2 Washburn on Real Prop., 624; *Bardwell* v. *Ames*, 22 Pick., 358; *Green* v. *Putnam*, 8 Cush., 29. If a man grants a piece of land for the purpose of constructing a mill dam upon it by the grantee, he thereby grants the right to place a part of the dam upon the adjoining land of the grantor if absolutely necessary. *Dryden* v. *Jepherson*, 18 Pick., 385; 2 Washburn on Real Prop., 624.

Inasmuch therefore as the deed is silent in relation to the mode of deepening the ditch, it contains a latent ambiguity, and where that is the case the extrinsic circumstances may always be shown in order to ascertain in what sense the par-

ties intended to be understood by the terms they use. *Brown* v. *Brown,* 4 Conn., 269; *Lines* v. *Flagg,* id., 581; *Strong* v. *Benedict,* 5 id., 210; *Brown* v. *Slater,* 16 id., 192; *Baldwin* v. *Carter,* 17 id., 201; *Ely* v. *Adams,* 19 Johns., 313; 1 Greenl. Ev., § 288; 1 Swift Dig., 180.

Should we interpret the deed by the aid of these circumstances we can have no doubt that the grantor intended to confer the right to deepen the ditch in the usual mode in similar cases. Suppose the defendant while owner of the land had sent his servant, skilled in the business of digging ditches in similar places, with the simple direction to *deepen the ditch.* Would the servant have supposed that the defendant intended that the unusual and extraordinary mode of deepening the ditch by curbing should be resorted to, when the extra expenses of that mode would equal many times the value of the land necessary to be taken in deepening the ditch in the usual mode, and more especially when he found the ditch to be deepened had sloping sides constructed by the defendant in accordance with the usual mode of ditching such lands? It is easy to see that the defendant would have had cause to complain if his servant had departed from the usual mode in deepening the ditch. He would have said that inasmuch as he had given no special directions in regard to the mode of doing it, his servant should have followed the customary mode in similar cases.

What would have been true in the case supposed, is true in the case under consideration. If the defendant had intended to restrict the plaintiffs to a mode of deepening the ditch different from the usual one, he should and would have done it specifically in his deed. This he did not do and he therefore intended the usual mode in similar cases.

There is no error in the judgment complained of.

In this opinion the other judges concurred.