## Maine Red Granite Company

### *vs.*

## George W. York.

### Cumberland. Opinion March 24, 1896.

*Guaranty. Principal and Agent.*

A guaranty should receive a fair and reasonable interpretation, so as to attain the object for which it is designed.

The Machiasport Company received an order for some stone which the company was unable to fill, and application was made to the Red Granite Company for assistance; the latter company declined to deliver stone on the credit of the Machiasport Company, but expressed a willingness to do so on the credit of the defendant. Thereupon the defendant wrote a letter addressed to the manager of the Red Granite Company of the following tenor: "Dear Sir: Mr. Pattengall advises me that he is in need of about $200 worth of Red Beach stock. Kindly fill such orders as he ·may give you, and I will attend to the payment of same as they become due. Geo. W. York, Treas. of the Machiasport Granite Company." *Held;* that the defendant became personally bound by this letter.

The addition, "Treas. of the Machiasport Granite Company," does not relieve the defendant from a personal liability as guarantor.

The use of the words "about $200 worth" in the guaranty *held* to be no more than an estimate; and a verdict of $254.70 was sustained.

On Exceptions by Defendant.

This was an action of assumpsit on a guaranty, tried before a jury in the Superior Court, for Cumberland county. The jury returned a verdict of $254.70 for the plaintiff.

The case appears in the opinion.

*Augustus F. Moulton,* for plaintiff.

*Benj. Thompson,* for defendant.

The defendant did not intend to bind himself personally to pay the plaintiff's debt, and it is contended that the language used was not such as to make a personal promise on his part. The writing was an assurance on his part to "attend to the payment" as it became due. This assurance is signed by the defendant in his capacity of treasurer of the Machiasport Granite Company. While the defendant would not contend that an absolute promise signed as this letter was would not bind the signer personally, yet a promise of this particular nature merely to attend to the payment, and signed as the treasurer of the corporation, and in the line of his official duties, does not purport to be a personal obligation on his part to pay the debt. Counsel cited: *Russell* v. *Clark*, 7 Cranch, 69, p. 70; *Rice* v. *Gove*, 22 Pick. 158, 161; *Eaton* v. *Mayo*, 118 Mass. 141; *Clerk* v. *Russel*, 3 Dall. 415; *Riter* v. *Sun, &c., Co.*, 37 Pac. Rep. (Utah) 257; *Bank* v. *Young*, 14 Fed. Rep. 889.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, WHITE-HOUSE, WISWELL, JJ.

WALTON, J. The defendant is sued as guarantor of a debt due from the Machiasport Granite Company to the Maine Red Granite Company; and the question is whether a letter written by the defendant to an agent of the Red Granite Company justified that company in delivering stone to the Machiasport Company on the defendant's credit. We think it did.

It appears that the Machiasport Company received an order for some stone which the company was unable to fill, and that application was made to the Red Granite Company for assistance; that the latter company declined to deliver stone on the credit of the Machiasport Company, but expressed a willingness to do so on the credit of the defendant; and that thereupon the defendant wrote a letter addressed to the manager of the Red Granite Company of the following tenor:

"Dear Sir: Mr. Pattengall advises me that he is in need of about $200 worth of Red Beach stock. Kindly fill such orders as he may give you, and I will attend to the payment of same as they

become due. Geo. W. York, Treas. of the Machiasport Granite Company."

It is urged in defense that this letter was not intended to bind the defendant personally, and that the language used will not justify such a construction of it. It is insisted that no one should be compelled to pay another's debt, unless the proof of his obligation to do so is clear; and that a writing, claimed to be a guaranty of another's debt, should be construed as favorably for the writer as the language used will allow.

Some authorities do so hold. Others hold that the words are to be taken as strongly against the party giving the guaranty as the sense or meaning of them will allow. In *Douglass* v. *Reynolds*, 7 Pet. 115, Judge Story said that guaranties are of extensive use in the commercial world, upon the faith of which large advances are made and credits given, and care should be taken to hold the party bound to the full extent of what appears to be his engagement. And again, in *Lawrence* v. *McCalmont*, 2 How. 426, the same learned judge said: "We have no difficulty whatever in saying that instruments of this sort ought to receive a liberal interpretation. By a liberal interpretation, we do not mean that the words should be forced out of their natural meaning; but simply that the words should receive a fair and reasonable interpretation, so as to attain the object for which the instrument is designed, and the purposes to which it is applied. We should never forget that letters of guaranty are commercial instruments, generally drawn up by merchants in brief language, sometimes inartificial, and often loose in their structure and aim; and to construe the words of such instruments with a nice and technical care would not only defeat the intention of the parties, but render them too unsafe a basis to rely on for extensive credits, so often sought in the present active business of commerce throughout the world. . . . If the language used be ambiguous, and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor; for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words, by which the other party is misled to his injury."

These extracts have been thought to express very happily and accurately the rule that ought to prevail in the construction of letters or other writings claimed to be guaranties, and upon which credits for money or goods have been obtained. *Gates* v. *McKee*, 64 Am. Dec. 545 (13 New York, 232).

And the same rule for the construction of guaranties seems to prevail in England. In *Mason* v. *Pritchard*, 12 East, 227, the court said that the words were to be taken as strongly against the party giving the guaranty as the sense of them would admit; and in *Hargreave* v. *Smee*, 6 Bing., 244, Chief Justice Tisdale said that "there is no reason for putting on a guaranty a construction different from what the court puts on any other instrument;" and that "with regard to other instruments the rule is, that if the party executing them leaves anything ambiguous in his expressions, such ambiguity must be taken most strongly against himself."

In *Hotchkiss* v. *Barnes*, 34 Conn. 27, the defendant wrote the plaintiff a letter saying: "Sir: You can let Mr. Day have what goods he calls for, and I will see that the same are settled for," and the court held that the letter not only constituted a guaranty, but a continuing guaranty.

In the case now before us, the defendant wrote the plaintiff's managing agent a letter saying: "Kindly fill such orders as may be given you, and I will attend to the payment of same as they become due." True, he annexed to his signature a statement of the fact that he was treasurer of the company desiring to obtain the goods; but it is well settled in this state that such an addition to the name of the signer of an obligation will not relieve him from personal responsibility. *Sturdivant* v. *Hull*, 59 Maine, 172; *Mellen* v. *Moore*, 68 Maine, 390; *Rendell* v. *Harriman*, 75 Maine, 497; *McClure* v. *Livermore*, 78 Maine, 390.

It seems to us that in the case now before us, the language of the letter is stronger, and more clearly creates the liability of a guarantor, than the language of the letter in the Connecticut case. In the Connecticut case, the language of the letter was, "and I will see that the same are settled for." Here, the language of the letter was, "and I will attend to the payment of the same as they

become due." It seems to us that the latter is the stronger of the two promises, and more clearly creates the obligation of a guarantor. And if the former was rightly held to create the obligation of an obligor (and we do not doubt that it was) a fortiori, the latter should be held to create such an obligation. And it is the opinion of the court that it did create such an obligation, and that the ruling in the court below upon this point was correct.

Another question raised at the trial in the court below was with respect to the amount. It was claimed that if the defendant was liable at all, he should not be held for more than $200; and the court was requested to so instruct the jury. The court declined. We think the requested instruction was properly withheld. True, the defendant stated in his letter that he had been advised that "about" $200 worth of Red Granite stock would be needed; but this was no more than an estimate; and the use of the word "about" shows that entire accuracy was not intended. If the amount delivered had been very much in excess of the amount named, it might, perhaps, be regarded as evidence of bad faith, and require a limit to be fixed to the defendant's liability. But no such excess is shown; and the amount of the verdict is only $254.70. It is the opinion of the court that this sum can not be regarded as so largely in excess of the estimate as not to come fairly within the terms of the defendant's guaranty.

*Exceptions overruled.*