## OZIAS BISSELL *vs.* WILLARD GRANT.

A privilege in a spring of water was conveyed by *G* to *B* in the year 1849, in the following terms :—" Do lease to the said *B* the following right and privilege, the same to be a perpetual privilege to him and his heirs and assigns forever. Said privilege is, that the said *B* shall have the right to lay a pipe half an inch in diameter from the spring, which is on the lot of said *G*, and conduct the same to the dwelling house and barn of said *B* and his heirs forever; with the right to dig a trench across the land of *G* to lay said pipe." From 1849 to 1853 *B* made no use of the spring. From 1853 to 1863 he brought the water by an open trench to a tub about thirty rods from his house and barn, where it was used for watering his cattle. In 1863 he put a half-inch pipe into the spring and brought the water by it to the tub. There was more water thus brought than he needed for his cattle, and a large part of it ran to waste. In a suit brought by *B* against *G* for disturbing the pipe, it was held :

1. That the easement conveyed by *G* to *B* was not in gross, but appurtenant to the real estate then owned by *B*.

2. That *B* had a right to draw from the spring all the water that would run through a half-inch pipe, and that it was no abuse of the right to permit the water to flow continuously from the mouth of the pipe.

3. That it was no abuse of the right to use the water thirty rods from, instead of at, his house and barn; the owner of an easement, when not prevented by words of absolute restraint, having the right to change the mode of using it, if he does not make it more onerous to the servient estate.

*B* in 1858 conveyed his house and barn, with the land connected with them, to his children, reserving to himself and wife the use of the premises for their lives. The privilege in the spring was not referred to in the deed. Held that the easement was not extinguished, but remained in *B*, as a part of the life estate reserved.

Such a conveyance of a fee with a reservation of a life estate operates to convey to the grantee only a remainder. The interest of the grantor does not pass out of him for a moment.

CASE, for obstructing a water course; brought to the Superior Court in Hartford County, and tried to the court. The court found the following facts:

On the 4th day of August, 1849, the plaintiff and defendant bought a piece of land of one Sanford Grant, in which they were equally interested, the south half of which was conveyed to the defendant, and the north half to the plaintiff. On the part conveyed to the defendant was a valuable spring of water, situated about nine rods from the part conveyed to

the plaintiff. On the same day the defendant executed under seal and delivered to the plaintiff the following instrument, which was duly witnessed, acknowledged and recorded :—

"Know all men by these presents that I, Willard Grant, of South Windsor, in Hartford County, Connecticut, for the consideration of one cent received to my full satisfaction of Ozias Bissell, of said town, do by these presents lease and let to the said Ozias Bissell the following right and privilege, and the same to be a perpetual privilege to him and to his heirs and assigns forever. Said privilege is that the said Bissell shall have the right to lay a pipe one half-inch in diameter, from the spring which is on the lot of said Grant, purchased this day of Sanford Grant, and from said spring conduct, by a pipe as aforesaid, to the dwelling house and barn of the said Bissell and his heirs forever. And the said Bissell shall have a right to dig a trench or ditch across the lot of said Grant from said spring to the north line of said lot, for the purpose of laying said pipe. In testimony whereof I do hereto set my hand and seal at said South Windsor, on this 4th day of August, 1849."

From 1849 to 1853 the plaintiff made no use of the water of the spring. In 1853 a ditch was dug by one Smith, for the purpose of draining the defendant's land, with the plaintiff's consent, so as to conduct the water from the spring directly to the plaintiff's land, which was there taken by the plaintiff to a tub standing on his own land near the defendant's, and about thirty rods from his house and barn, where it was used by him until 1863, for watering cattle, &c., principally in the summer season, but to some extent in the winter also. In November, 1863, the defendant, for the purpose of constructing a hydraulic ram to carry the water from the spring to his own dwelling house, expended considerable money and labor in enlarging and stoning up the spring, which was well known to the plaintiff, and to which he made no objection, except to notify the defendant, while the work was being done, and just before it was completed, that he should insist upon his right to water under the lease. In

doing this work the defendant cut off the flow of water from the spring to the plaintiff's land. The plaintiff thereupon entered the defendant's land and laid a half-inch pipe from the spring to a tub standing on his own land, about ten rods from the spring, and thereby supplied himself with water, for watering his cattle in a pasture not a part of the Grant lot. A large part of the water was suffered to run to waste. At this time there was another spring, some fourteen feet easterly from the one above described, which had been cleared out by the defendant, and a barrel had been placed therein. This spring furnished sufficient water for the plaintiff's use, and was as convenient for his purposes as the other. The defendant called the plaintiff's attention to this spring, and told him he was at liberty to take water from it, but forbade his taking water from the other. The west spring was the one referred to in the lease, as it did not appear that the parties were then aware of the existence of the other. The fall from said spring to the plaintiff's tub is about fifteen feet. The pipe remained in the spring constantly discharging a column of water half an inch in diameter until April 1864, when it was taken up by the defendant. The plaintiff soon after relaid it, and it remained, discharging water as before, until November 22d, when the defendant again removed it. The plaintiff replaced it on the 25th, and on the 26th of the same month the defendant again removed it. Before taking up the pipe in April, 1864, the defendant notified the plaintiff to do it, and gave him a reasonable time therefor, but he refused to do it. There was and is plenty of water in the west spring to supply both parties, by a reasonable and economical use thereof, but the plaintiff, by his manner of using it as aforesaid, practically exhausted the supply, so that it was only valuable to the defendant as he carried the water therefrom by hand. The plaintiff's house and barn are about forty rods from the spring, with a fall of about seventy-five feet.

On the 28th day of June, 1858, the plaintiff sold his house and barn, and the land so purchased by him of Sanford Grant, to his children, William O. Bissell and Mary A. Bissell, reserving to himself and wife a life estate therein. The deed

made no reference to the privilege in the stream of water, either in the part describing the premises granted or in the reservation. The reservation was in the following language : " Reserving to myself and my wife the free and unmolested use and occupancy of the said described premises, during our lives, and after our decease the said Wm. O. and Mary A. Bissell are to become the peaceable owners and occupants of the above described premises as conveyed in the above deed."

Upon these facts the case was reserved for the advice of this court.

*Robinson* and *Spencer*, for the plaintiff.

1. The defendant's grant to the plaintiff authorized the use of the water from the spring, to be drawn through a half-inch pipe. The *quantity* of the water is the only subject open to abuse under the facts. The purposes for which the water was to be used were the ordinary dwelling house and farm purposes. There is no limitation to a particular kind of use as is sometimes the case. Nor is there any restriction upon the flow of water other than what is raised by the restricted diameter of the pipe. The flow may be continuous. The fact that the water was carried only part of the way to the plaintiff's house is immaterial to justify the acts of the defendant. The owner of an easement has a right to change the mode of using it in any way which does not make it more onerous. This principle is recognized by all the courts. *Buddington* v. *Bradley*, 10 Conn., 214, 219; *King* v. *Tiffany*, 9 id., 162; *Whittier* v. *Cocheco Manuf. Co.*, 9 N. Hamp., 454; *Cowell* v. *Thayer*, 5 Met., 253; *Davis* v. *Brigham*, 29 Maine, 391; *Stackpole* v. *Curtis*, 32 id., 383; *Belknap* v. *Trimble*, 3 Paige, 577; *Bullen* v. *Runnels*, 2 N. Hamp., 255; *Hale* v. *Oldroyd*, 14 Mees. & Wels., 789; *Saunders* v. *Newman*, 1 Barn. & Ald., 258, 262; Washburn on Easements, 283, 284, 287. The use of the water for watering cattle pastured on other land of the plaintiff than the lot purchased of Sanford Grant, can not affect the case. There was no limitation in the deed of the easement to a use of the water on any particular land, and it

extended to any land then owned and occupied in connection with his house and barn.

2. If we had abused our rights we still had rights left which the defendant was bound to respect. If he undertook to abate our excesses, he could abate no more. But he became liable because he cut off our rights *in toto,* if for no other reason. *Greenslade* v. *Halliday,* 6 Bing., 379. This is a leading case and is cited approvingly by Washburn, Woolrych, and Angell. *Rex* v. *Pappineau,* 2 Stra., 686 ; *Dyer* v. *Depui,* 5 Whart., 584.

3. Our deed in 1858 has in no way injured our right in the easement. 1st. The easement and the fee were entirely distinct estates. The right to a fee and the right to an easement in the same estate are rights entirely independent of each other, and may well subsist together in different persons, and each may vindicate his right in court. *Hancock* v. *Wentworth,* 5 Met., 446 ; *Morgan* v. *Moore,* 3 Gray, 319. It was not an incident appurtenant to the estate. Nothing passes as an incident to a grant except it is necessary to the enjoyment of the thing granted. *Johnson* v. *Jordan,* 2 Met., 239 ; *Collier* v. *Pierce,* 7 Gray, 18. And our own court has expressly ruled that a grant of the fee, even when the appurtenances were mentioned in the habendum, did not carry an easement just like the one in this case. *Manning* v. *Smith,* 6 Conn., 289. There was no extinguishment by us. If there had been a non-user, that would work no extinguishment of a right to a flow of water. Woolrych on Waters, 293. And especially in case of a grant of an easement, the neglect of an owner to use furnishes no presumption of extinguishment. Angell on Watercourses, § 252 ; *Arnold* v. *Stevens,* 24 Pick., 106 ; *White* v. *Crawford,* 10 Mass., 183. If the rights are separate, of course a deed of the fee alone is no evidence of an intention to abandon the easement. 2d. But if the right was appurtenant to the land, there is no extinguishment of it by our silence in the deed. It would not be necessary to mention it. The term "premises," with the description of the land, would carry it, if it were an appurtenance ; and when we reserved

the life use and occupancy of all we granted, we reserved of course the incidents of the grant.

*T. C. Perkins* and *Calhoun*, for the defendant.

1. The plaintiff at the time of bringing his suit had no right to the water of the spring in question. 1st. The easement conveyed to him by the deed of August, 1849, was not an easement *in gross*, but appurtenant to the real estate then owned by him. It was by its terms "perpetual," granted to the "plaintiff, his heirs and assigns forever," and to be used only in connection with his real estate. No easement will be presumed to be in gross when it can fairly be construed to be appurtenant to some other estate; for an easement in gross is neither assignable nor inheritable. Washburn on Easements, 8, 39, 161. 2d. By the conveyance of his real estate by the plaintiff to his children, in June, 1858, reserving a life-estate only to himself and wife, the easement in question was extinguished. To the time of that conveyance the easement had remained as a mere unexercised right in the plaintiff, in the nature of an incorporeal hereditament, having never been reduced to actual use. If it had then become appurtenant by actual use it would have passed to the plaintiff's children under his deed. Washburn on Easements, 25, 26; *Kent* v. *Waite*, 10 Pick., 138; *Grant* v. *Chase*, 17 Mass., 443; *Thayer* v. *Payne*, 2 Cush., 327; *Morgan* v. *Mason*, 20 Ohio, 401; *U. States* v. *Appleton*, 1 Sumn., 492; *Manning* v. *Smith*, 6 Conn., 289. Otherwise the easement could never have enured to their benefit, as nothing would pass to them on the determination of the life estate. But the easement, not having been reduced to actual use by the plaintiff before the deed to his children, and not having been especially mentioned in that conveyance, did not pass to them; for by the grant of a particular estate no easement passes which is not *apparent* by actual use, or especially mentioned in the deed. Washburn on Easements, 36, 524; *Morgan* v. *Mason*, 20 Ohio, 401; *Hazard* v. *Robinson*, 3 Mason, 272; *Russell* v. *Scott*, 9 Cow., 279; *Gayetty* v. *Bethune*, 14 Mass., 49; *Carbrey* v. *Willis*, 7 Allen,

364 ; *Barlow* v. *Rhodes*, 1 Crompt. & Mees., 438 ; *Grant* v.
*Chase*, 17 Mass., 443.   After the deed of June, 1858, the
plaintiff and his wife were merely life-tenants, under the opera-
tion of the statute of uses, of the *same* premises described in
the deed to the children, who were the remainder-men.   *Bar-
rett* v. *French*, 1 Conn., 362 ; *Fish* v. *Sawyer*, 11 id., 545 ;
*Bryan* v. *Bradley*, 16 id., 474 ; *Russell* v. *Scott*, 9 Cow., 279 ;
2 Black. Com., 330.   As such life-tenants they were entitled, ·
by the terms of the deed, to the " use and occupancy " only
of the premises conveyed to the children.   They had no greater
rights than life-tenants generally, and could do no acts chang-
ing the character of the premises, or binding their remainder-
men, and consequently could not reduce this easement into
possession and attach it to the real estate by actual use.
Washburn on Easements, 114 ; Taylor on Land. and Tenant,
§§ 173, 174 ; *Hill* v. *Roderick*, 4 Watts & Serg., 221.   It fol-
lows, therefore, as a necessary deduction from the foregoing
principles, that the easement was extinguished by the plain-
tiff's deed of June, 1858.

2.   But the plaintiff cannot maintain his action, because, in
attempting to use the water in the manner and at the place
he did, he was in the exercise of no right acquired by his deed
of August, 1849, but was a mere trespasser on the defendant's
premises.   The grant of an easement is to govern the mode
of its enjoyment.   Washburn on Easements, 42, 72 ; Angell
on Watercourses, §§ 144, 149 ; 1 Swift. Dig., 105 ; *Miller* v.
*Bristol*, 12 Pick., 550 ; *Comstock* v. *Van Deusen*, 5 id., 163 ;
*Davenport* v. *Lamson*, 21 id., 72 ; *Mandeville* v. *Comstock*, 9
Mich., 536 ; *Deshon* v. *Porter*, 38 Maine, 289.   The deed of
the defendant to the plaintiff gave the latter only the right to
take the water of the spring to his house and barn through a
half inch pipe, and to use it there for the usual purposes, and
in a reasonable manner.   The plaintiff, however, carried the
water to a spot remote from his house and barn, and used it
there " for watering his cattle in a pasture not a part of the
Grant lot," and in a wasteful and unreasonable manner, allow-
ing it to run constantly in a full flow under a head of fifteen
feet, thus wasting a large part of the water, and depriving

the defendant of the use of the spring for more than a year. These acts of the plaintiff were illegal, created a nuisance, and made him a trespasser; and he cannot complain of the defendant for removing the pipe after due notice.   *Elliott* v. *Rhett,* 5 Rich. (Law,) 405 ;   *Kaler* v. *Beaman,* 49 Maine, 207 ;  *Comstock* v. *Van Deusen,* 5 Pick., 163 ; *Davenport* v. *Lamson,* 21 id., 72 ;  *Deshon* v. *Porter,* 38 Maine, 289.

3. By allowing the defendant to expend money and labor on the spring to fit it for a particular purpose, without objection and with his knowledge, the plaintiff is estopped from now claiming a right which he had suffered to remain unenjoyed for more than fourteen years.   *Preston* v. *Mann,* 25 Conn., 118.   Especially should the plaintiff be estopped in this case, since he could have used the water of the East spring, which was as convenient and sufficient for his purpose.

BUTLER, J.   The plaintiff laid his pipe in the defendant's land, and to the defendant's spring, and drew the water therefrom, pursuant to an unequivocal and valid grant.   The defendant took up and removed the pipe and the plaintiff replaced it.   It was again removed, and still again replaced and removed.   Whatever may be said of the abuse of his right by the plaintiff, the acts of the defendant were wanton and unnecessary.   A plug in the end of the pipe, or the removal of the end of the pipe from the water would have prevented the flow.   And so a contraction of the end of the pipe with a pair of nippers would have prevented any abuse of the right.

The plaintiff then cannot justify the acts done except by showing an extinguishment of the right, and this, admitting the validity of the deed, he attempts to do.

He says, in the first place, that the privilege conveyed by the deed was not an easement in gross, but appurtenant to the real estate then owned by him.   Such seems to have been the intention of the parties to the deed, looking to its language, and the surrounding circumstances.   And so it may fairly be construed.

The defendant further claims, that the deed from the plaintiff to his children in 1858, of the estate to which the privilege

was intended to be appurtenant, without an express convey-
ance of the privilege, and reserving a life estate only to him-
self and wife, extinguished the easement in question; but this
is not manifest.

He says, in the first place, that at the time of conveyance
to the children, the privilege had never been exercised or re-
duced to actual use and occupation, and did not pass as an
appurtenance to the plaintiff's children under his deed. He
says, if we understand him, that the right not having been
exercised, remained in the nature of an incorporeal heredita-
ment merely, and did not become appurtenant to the estate.

There is some nicety in the law in relation to the character
of the easements which will pass to a grantee with the estate,
without being named in the deed, and as incidents or appur-
tenances to the estate. Whether the privilege in question,
not being named in the deed, passed to the plaintiff's children
or not, is not a material question in this case; but if the de-
fendant is right in his assumption that the deed of the privi-
lege constituted that privilege an appurtenance to the plain-
tiff's estate, and it thereby became such, it is not easy to see
why upon principle, and consistently with the authorities cited,
it did not pass as an appurtenance to the children; and why,
if they had taken the entire estate, they could not have ex-
ercised the privilege at any time before it was lost or aban-
doned. It is said that it did not exist in appearance, and was
not then in use, or absolutely necessary to the enjoyment of
the estate. But it did exist in fact and law, as an appurten-
ant right by force of a recorded deed of which both parties
had knowledge, and it may well be presumed that both parties
contemplated it as an appurtenance which would pass.

Moreover, the subject-matter of the privilege was the en-
joyment of the water of a certain spring, conducted on to the
premises of the plaintiff to be there enjoyed by him. The
plaintiff had not so conducted it by means of a pipe, but the
defendant had so conducted it on to the plaintiff's premises
by means of a trench, and the plaintiff was in the *enjoyment*
and *use* of the entire water of the spring. This conventional
use of the subject-matter of the privilege, though in a different

manner, would seem to be a sufficient actual use of the ease-
ment within the most technical nicety involved in the decision
of the cases cited.

But, as we have said, the decision of this question is imma-
terial.   The plaintiff possessed the privilege by force of the
defendant's deed, and, as far as he was concerned, it had not
been lost, abandoned or extinguished.   When he conveyed
to his children, he retained a portion of the estate, to wit, a
life estate for himself as well as his wife.   The argument of
the defendant assumes that the conveyance to the children,
reserving the life estate, placed the plaintiff in the same posi-
tion that he would have been in, if he had conveyed his whole
estate to the children, and taken back from them a convey-
ance of a life-estate for himself and wife.   But the assumption
is unfounded.   A conveyance like that made by the plaintiff
to his children did not for an instant deprive the plaintiff of
an interest in the estate.   It was holden in the cases cited, of
*Barrett* v. *French,* 1 Conn., 362, and *Fish* v. *Sawyer,* 11 Conn.,
545, that such a conveyance would be good to convey a re-
mainder merely, and to *retain* a life estate, by force of imme-
morial usage and custom in this state, if it was not good as a
covenant to stand seized.   In either event, a remainder only
passes by the deed and the life estate is excepted and retained,
even though the reservation is contained in the habendum of
the deed.   Whatever may be said, therefore, as to the rights
of the children or of the wife in respect to the privilege in
question, the right of the plaintiff to the enjoyment of it dur-
ing his life cannot be questioned, for as to him there can be
no pretence of extinguishment.

The defendant further claims that the plaintiff was a tres-
passer in attempting to use the privilege, because he did not
take the water to his house and barn and use it in a reasona-
ble manner.   We do not think this claim should prevail.   The
grant of the privilege is that he " shall have the right to lay
a pipe one half inch in diameter from the spring which is on
the lot of said Grant, purchased this day of Sanford Grant,
and from said spring conduct by a pipe as aforesaid to the

dwelling-house and barn of said Bissell and his heirs forever;" adding, said Bissell "shall have a right to dig a trench or ditch across the lot of said Grant, from said spring to the north line of said lot, for the purpose of laying said pipe." The pipe was in fact laid from the spring on to the lot of the plaintiff, in the general direction of the house and barn, and the cattle of the plaintiff there watered, the water being permitted to run at all times the full size of the pipe.

There can be no doubt, we think, that upon a true construction of the deed, the plaintiff had a right to draw all the water from the spring which would run through a half inch pipe.

It is a rule in the construction of deeds, that the language, being the language of the grantor, is to be construed most strongly against him. He did not see fit to put any restriction upon the quantity of water taken, unless the size of the pipe constitutes such restriction. He authorized the water to be taken by a pipe of that size, and by a just application of the rule stated, must be deemed to have authorized the taking of all the water which such a pipe would conduct. Moreover, it is the general practice to measure the quantity of water to be taken from springs and flumes and reservoirs by the size of the pipe or orifice through which it is to flow. It was not an abuse of the right therefore, for the plaintiff to permit the water to flow continuously from the mouth of the pipe.

Nor was it an abuse of the right to use the water thirty rods from his house and barn, instead of using it at those places. It is well settled that the owner of an easement, if not prevented by words of absolute restraint, may change the mode of using it, if he does not make it more onerous to the servient estate. Here the use of the water did not affect the defendant injuriously. It could make no difference to him whether he conducted the water to his house and barn and there received it in vessels for the use of his family and for watering his cattle, or whether he stopped short of both with his pipe and carried the water in pails to his house, or drove his cattle to that spot to water them. No more water was taken in either event than the deed justified, nor was it appropriated to any different purpose, and if the site of a mill may

be changed, and with it the terminus of the flow of water by which it is operated may be changed under a grant, surely the terminus of a pipe leading from a spring may be changed, and located to suit the convenience of the grantee, unless the grantor has seen fit to prevent it by some restriction in the deed.

The defendant claims, in the third place, that the plaintiff had lost his right by estoppel, but there are no facts found to justify that claim.

·The Superior Court must therefore be ·advised to render judgment for the plaintiff.

In this opinion the other judges concurred.