ALDEN SMITH, ADMINISTRATOR, *v.* THE MOODUS WATER POWER COMPANY.

*A* and *B,* being tenants in common with *C* of certain lands situated near a pond on which was a dam and factory owned by *D,* executed jointly, but without *C,* a lease conveying an easement in the land to *D* and his assigns, in the following language :—"for the purpose of flowing with water all the land we the lessors own, adjoining the pond, commonly called Bashan Pond, in the town of *E,* (describing the land by metes and bounds;) and we hereby grant to said *D* full liberty to raise the dam at the natural outlet of said pond and flow the land of the lessors as high as the water will rise in said pond, for the benefit of the factory now occupied by *D,* or any other purposes *D* or his assigns shall see proper to use it for. To have and to hold to *D* and his assigns, to use and occupy for the purpose aforesaid, as to said *D* shall seem meet and proper. " The lease contained covenants of right to convey and for quiet enjoyment. Subsequently *B* and *C* conveyed all their interest in the land to *A*. *D* afterwards conveyed his factory and dam "with the privileges and appurtenances" to *E*. Neither *D* nor *E* raised the dam or flowed the land described in the lease for more than thirty years after the execution of the lease, during which period the land remained in the occupation of *A,* and was used by him for pasturing cattle. In an action by *A's* administrator, under the possession given him by the statute, against *E,* for raising the dam and flowing the land, it was held, 1. That the lease purported to convey to *D* the entire easement in the land described, and that the plaintiff was estopped by the covenants of *A* from claiming that the interest subsequently acquired by *A* was free from the easement. 2. That the lease conveyed the right to raise the dam and thereby flow the land described. 3. That this right was not limited to *D,* but passed to his assigns. 4. That the case was one of a grantor conveying a greater interest than he owned, and not of a conveyance by metes and bounds of a part interest in a tract of land owned by tenants in common. 5. That the right to raise the dam was not lost by the neglect of *D* and his assigns to exercise it during the period mentioned. 6. That this right was conveyed by the deed from *D* to *E* under the term "privileges and appurtenances."

ACTION ON THE CASE, by the plaintiff as administrator of Jeremiah Smith, Junior, for injury caused by flowing certain lands in the possession of the plaintiff as such administrator, under Gen. Stat. 407, Sec. 25 ; brought to the Superior Court in Middlesex county, and tried to the jury upon the general issue with notice of a claim of right, before *Granger* J.

On the first day of May, 1832, Jeremiah Smith, Junior, was

sole owner in fee of part of the lands described in the declaration. On that day Jeremiah Smith, Senior, conveyed the remainder of the lands so described to Jeremiah Smith, Junior, and Erastus Smith, and on the same day Jeremiah Smith, Junior, and Erastus Smith conveyed by deed an undivided three-seventeenths of the same land to Jeremiah Smith 3d in fee.

On the 1st day of September, 1832, Jeremiah Smith, Junior, and Erastus Smith executed to the Union Manufacturing Company, a corporation, the following lease, which the defendants claimed covered all the land described in the declaration.

" Know all men by these presents that we, Jeremiah Smith, Jr, and Erastus Smith, of East Haddam in the state of Connecticut, for the consideration of one hundred and seven dollars and twenty cents received to our full satisfaction of the Union Manufacturing Company, (a corporation duly incorporated by the legislature of this state and established in said East Haddam) this 1st day of September, A. D. 1832, have demised and to farm let for the purpose of flowing with water, and do by these presents demise and to farm let for the purpose aforesaid, unto the said Union Manufacturing Company and their assigns, all the land we the said Jeremiah Jr. and Erastus Smith own adjoining the pond commonly called Bashan Pond in said East Haddam, beginning at the highway at the northwest corner of said pond, and running a southerly direction by said pond until it strikes Jabez Swan's land :—and hereby give and grant to said Union Manufacturing Company full leave and liberty to raise the dam at the natural outlet of said pond and flow the land of the said Jeremiah Jr. and Erastus Smith, as high as the water will rise in said pond, for the benefit of the factory now occupied by said company, or any other purposes said company or their assigns shall see proper to use it for, for the term of nine hundred and ninety-nine years from this date. To have and to hold to the said Union Manufacturing Company and their assigns for said term, to use and occupy for the purpose aforesaid as to said company shall seem meet and proper. And

the said Jeremiah Jr. and Erastus Smith do further covenant with the said company that they have good right to let and demise the said letten and demised premises in manner aforesaid and for the purposes aforesaid ; and that they the said Jeremiah Jr. and Erastus Smith during said time will suffer the said company quietly to have and to hold, use, occupy, possess and enjoy the same for the purposes aforesaid, free and clear of all incumbrance, claims, rights and titles whatsoever. In witness whereof, &c."

The Union Manufacturing Company were the owners of the dam at the outlet of Bashan Pond, and of the factory there situated.    On the 15th day of April, 1856, the company conveyed their dam and factory, " with all the privileges and appurtenances appertaining thereto," to N. A. Cowdrey by deed, and on the first day of August, 1857, Cowdrey conveyed the same premises by deed to the defendants.

On the 29th day of June, 1833, Erastus Smith conveyed his interest in the land to Jeremiah Smith Jr., and on the 19th day of September 1836, Jeremiah Smith 3d conveyed to Jeremiah Smith Jr. all his interest in the land, being the three seventeenths conveyed to him by Jeremiah Jr. and Erastus before the lease.    Jeremiah Smith Jr. died in 1864, being at his death sole owner of the lands described in the declaration.

Neither the Union Manufacturing Company nor Cowdrey ever raised the dam and flowed the land described in the declaration, nor did the defendants do so until 1868, when they raised the dam four feet and overflowed the land.    The land so overflowed was at the date of the lease, on the 1st day of September, 1832, wood and swamp, covered with trees and bushes, and was enclosed with a large lot of land containing in all about two hundred acres, a part of which was woodland and part pasture land.    The only use which had been made of the land since the date of the lease, and before the dam was raised by the defendants, was that the same had been inclosed in said lot which had been used for pasturing cattle.

The plaintiff requested the court to charge the jury, that under the lease Jeremiah Smith Jr. had conveyed only his

interest in the land, and that his administrator was not estopped from claiming an interest under his subsequently acquired title from Jeremiah Smith 3rd ; that if the plaintiff was so estopped by reason of the lease being a conveyance of all the lands therein described, and not of the interest of the lessors only, the lease was void because it was a lease by two tenants in common by metes and bounds of a portion of the land held and owned by three tenants in common ; that the interest conveyed by the lease had not been conveyed by the deed from the Union Manufacturing Company to Cowdrey, or by the deed from Cowdrey to the defendants; and that if the jury should find that for a period of over thirty years the defendants and those under whom they claimed had not flowed the land or exercised any of the privileges conveyed by the lease, but that during all that time the plaintiff and those under whom he claimed had the uninterrupted, exclusive and adverse possession of the same, the plaintiff was entitled to recover.

The court did not so charge the jury, but charged them that the lease professed to convey to the Union Manufacturing Company the right to raise their dam and thereby overflow the land described in the lease bounding on the pond within the limits named in the lease ; and that the plaintiff was estopped from denying that Jeremiah Smith Jr. and Erastus Smith were the owners of the land thereby conveyed, or that they had a right so to lease the same ; and that the right to raise the dam and flow the land conveyed by the lease did pass to Cowdrey by the deed from the Union Manufacturing Company to him, and by the deed from Cowdrey to the defendants.

The jury rendered a verdict for the defendants, and the plaintiff moved for a new trial for error in the charge.

*Chadwick* and *Warner*, in support of the motion.

1. The court erred in its construction of the lease. The lease was executed, as appears from its recitals, in view of two facts, viz., the existence of Bashan Pond as created by a natural outlet, and the pond as created by the dam placed on

that outlet by the defendants. By a fair construction the lease cannot be so interpreted as to authorize the flowing of any more land of the lessors than the dam thus erected would flow. The absolute limit is "as high as the water will rise in said pond," that is, the pond or basin indicated or circumscribed by some then well defined limit or boundary. The lease is fully satisfied by authorizing the defendants to flow all lands flowed by the dam then placed on the outlet. Its object was not to authorize the creation of a new pond, neither did it limit it to the boundaries of the old or natural outlet. It had no reference to the uncertain state of the water in the pond, nor to the condition of the dam, nor to the future caprices of any one. There are no words indicating any intention to make any future extension of the boundaries of the pond. The right to raise the dam was restricted to the limit of the highest point on the dam as it then or before then had existed. The dam might have been then dilapidated, or temporarily carried away, in which case the words "to raise" would mean to keep or maintain the dam to its original status.

2. But construing the lease as a *grant of power* to place an *additional structure* on the dam as it then existed, this power is vested in the Union Manufacturing Company alone, and not in their assigns or subsequent appointees; and if possibly appendant or appurtenant to the estate in their hands, it ceased to exist when they parted with the estate. *Ren* v. *Bulkley,* 1 Doug. R., 293. And if, as the defendants claim, the lease grants the right to raise a new structure on the dam, and to flow as much land as the *lessees pleased,* the quantity of land to be flowed being left to their election, such election must have been made within a reasonable time, and the lessees having made an election are confined to that, or having made no election they are now equally estopped. They cannot change the bounds of the pond they have once fixed, or suffered to be fixed by an acquiescence of thirty-six years. It is well settled that when an election is given, and the person to whom it is given determines, that determination is final. 1 Rolle Abr., 726, (E.) 15 ; Com. Dig., tit. Election,

(C.) 2; *The State* v. *Norwalk & Danbury Turnpike Co.*, 10 Conn., 157; *Vandenburgh* v. *Van Bergen*, 13 Johns., 212.

3. The court erred in the construction of the lease as to its effect on the subsequently acquired three-seventeenths interest in the premises. The lease conveys no specific interest or quantity; it covers "all the land that we *own*," and in legal effect it leased only the lessors' then present interest, and nothing in its recitals or covenants can be so construed as to estop the lessors or their heirs from asserting any subsequently acquired title. The grant and covenants of warranty applied only to their then present interest and not to any estate of which they might subsequently become possessed. *Comstock* v. *Smith*, 13 Pick, 116; *Blanchard* v. *Brooks*, 12 id., 47; *Miller* v. *Ewing*, 6 Cush., 40. But the lease is without warranty, and there is therefore no estoppel in favor of the assignee of the grantee. 1 Swift's Dig., 363, 366, 370; 2 Parsons on Contr., 790; *Slater* v. *Rawson*; 1 Met., 450. Again, if the lease conveyed anything more than the interest the parties then held, it is void, being given by tenants in common to convey a portion of their common property by metes and bounds. *Griswold* v. *Johnson*, 5 Conn., 363; *Starr* v. *Leavitt*, 2 id., 243; *Mitchell* v. *Hazen*, 4 id., 511; 1 Swifts' Dig., 103.

4. The court erred in its construction of the deeds through which the defendants derive title. The deeds are specific as to the *property*, and the quantity of land conveyed, to wit, "about three acres." This conveys no right to the dam or reservoir above. The right to flow land not flowed is an interest in land, and can pass only by deed. Land never passes as appurtenant to land, for both are equally worthy in the eye of the law. It was a question for the jury whether this right was appurtenant or not. The charge of the court took the question from them. *Johnson* v. *Jordan*, 2 Met., 234; *Carbrey* v. *Willes*, 7 Allen, 364; *Grant* v: *Chase*, 17 Mass., 443; *Manning* v. *Smith*, 6 Conn., 289; *Collyer* v. *Pierce*, 7 Gray, 18. Thirty-five years of non-user was evidence of abandonment by the defendants, and should have

been left to the jury as such. *Hoffman* v. *Savage*, 15 Mass., 130 ; *Campbell* v. *Winslow*, 3 East, 294.

5. The claim of the plaintiff as to adverse use and possession was correct, and was a question for the jury. *Hoffman* v. *Savage*, 15 Mass., 130 ; *Emerson* v. *Wiley*, 10 Pick, 310 ; *French* v. *Braintree Manufacturing Co.*, 23 id., 216 ; *Williams* v. *Nelson*, id., 141.

*Hyde* and *Culver*, contra.

PARK J. On the trial of this case in the court below the plaintiff contended that Jeremiah Smith Jr. leased only his interest in the land described, and that consequently the plaintiff as his administrator was not estopped from claiming the interest in the land which he subsequently acquired from Jeremiah Smith 3rd.

We think it is clear that the lease purports to convey the entire interest of the land described in it. The language is, " all the land we the said Jeremiah, Jeremiah Smith Jr. and Erastus Smith own adjoining the pond commonly called Bashan Pond in said East Haddam, beginning at the highway at the northwest corner of said pond and running a southerly direction by said pond until it strikes Jabez Swan's land." There is nothing said here of any interest in the land less than the entire ownership. The expression, " all the land we own adjoining the pond," taken in connection with a description of the land by bounds, must mean that the land described was owned by them ; which could not have been said if they were mere tenants in common of the land with another person.

The lease contains a covenant of ownership, and the plaintiff must therefore be estopped to deny that his intestate, with the others named, owned the entire interest in the land at the time the lease was given. *Stowe* v. *Wyse*, 7 Conn., 214 ; *Hoyt* v. *Dimon*, 5 Day, 483 ; *Coe* v. *Talcott*, 5 Day, 88.

We see no error in the charge of the court, that the lease conveyed the right to raise the dam and thereby flow the

water upon the premises described in the lease. The expression " to raise the dam " implies that there is a dam in existence that may be raised, and applies to the whole dam, to one part of it as well as to another, so that the suggestion of the plaintiff, that the dam at the time might have been out of repair, or the old one destroyed by a freshet, and that the expression therefore may have been intended to apply to a repairing in the one case, or a rebuilding in the other, does not meet the requirements of the language used. Indeed, if this construction could apply, it would simply show that the expression is ambiguous, and in that case extrinsic evidence would be required to show in what sense it was used by the parties. But no such claim was made on the trial. The plaintiff insists that it must have been used in this sense, because the right granted is limited by the phrase " as high as the water will rise in said pond. " And that the term " said pond " means the pond made by the dam then exist ing, when capable of flowing back the water to its highest point. But this construction renders the lease inoperative, unless the existing dam set back the water upon the premises of the plaintiff's intestate higher than the lessees had a right to do, which is not even pretended.

The lease purports to convey a right, and it must be construed to have that effect if it can be done without doing violence to the language used. We think it is clear that the term " said pond " was used to designate the place where the flowage might be made, and that the power conferred should be limited only by the natural barriers to the water around the pond and the premises described. A pond increased or diminished by raising or lowering the dam is in common parlance called the same pond.

We think it is equally clear that the exercise of the power granted is not limited to the Union Manufacturing Company. There could have been no object to be accomplished by such limitation. If the lessors desired to limit the power granted it would have been an easy matter to have done so, but " full leave and liberty " is given the lessors to raise the dam for the benefit of the factory, or for any other purpose for which

they or their assigns shall see fit to use the same. It is quite too nice and technical to say that the power to raise the dam is conferred on the lessees only, but the use of it when raised may be enjoyed by their assigns; thus making a distinction between the right to raise the dam, and the right to flow the premises by the dam when raised. But this distinction has no foundation, as clearly appears by the habendum of the lease, which is, " to have and to hold to the said Union Manufacturing Company and their assigns, for said term, to use, and occupy, &c." To have and to hold what? Manifestly the right conferred; the right to raise the dam for the purposes specified in the lease.

We think also that there is no foundation for the claim of the plaintiff that the lease is void because it is a lease by metes and bounds of a part of a tract of land owned by the lessors in common with another party who never executed the lease. The lease does not attempt to make a partition of the land held in common. The lessors profess to own the entire interest in the tract described. The case is simply one where a grantor conveys a greater interest than he owned at the time. It is the ordinary case where a party is estopped to claim that he owned a less interest than the deed purports to convey.

Equally without foundation is the claim that the right to raise the dam was lost by the omission of the Union Manufacturing Company and their assigns to raise the dam for a period of thirty-six years. No doubt in certain cases where a right is conferred to be exercised at the option of a party, the right becomes exhausted by one exercise of the right, but this case does not come within the principle, for here the right was never exercised at all until the defendants did the acts for which this suit is brought. Omission to raise the dam cannot be construed into an exercise of the right to raise it. It might be evidence tending to show an abandonment of the right, but not the exercise of it. The right was theirs to be enjoyed at any time.

We think too that the plaintiff is wrong in his claim that this right did not pass from the Union Manufacturing

Smith *v.* Moodus Water Power Co.

Company to Cowdrey, and from Cowdrey to the defendants, under the grant in the deeds of "privileges and appurtenances." The lease was made for the benefit of the factory privilege. The right is an incorporeal hereditament, and could be enjoyed only in connection with the factory privilege, and is therefore strictly appurtenant to it. This court held, in the case of *Frink* v. *Branch*, 16 Conn., 260, that under the description in a deed conveying " the one equal undivided half of a satinet factory," together with the appurtenances, that not only the factory building was conveyed, but the land on which it stood, and the water privilege appurtenant thereto. This authority is in accordance with the ruling of the court below.

The plaintiff is also wrong in his claim in relation to adverse possession. The fact that the premises in question were enclosed in a lot containing about two hundred acres of land, and that the lot was exclusively used by the plaintiff's intestate for the pasturage of cattle during a period of more than fifteen years, without any objection and under a claim of right, furnishes no evidence of adverse user. All this is in perfect harmony with the right conveyed. That right was the mere right of flowage, and whatever herbage there may have been on the premises belonged to the lessors as much after the lease was given as before. Suppose a grant is made of a right of way, and the grantee omits to use the way for a period of fifteen years, and the grantor pastures the land over which the right of way passes. It has been held by numerous authorities that might be cited, that the grantee does not thereby lose his right, for there is no adverse user. Adverse user in this case would consist of such acts on the part of the owners of the soil as would prevent the lessees and their assigns from flowing the land.

A new trial is not advised.

In this opinion the other judges concurred.