CHARLES H. RUSSELL *vs.* EDMUND HEUBLEIN.

First Judicial District, Hartford, May Term, 1895. ANDREWS, C. J., TOR-
RANCE, BALDWIN, HAMERSLEY AND HALL, JS.

The question whether a right of way reserved in a deed is a personal right,
an easement in gross, or a permanent easement appurtenant to other
estate of the grantor, is to be determined from the intent of the parties
as gathered from the language employed to express it, read in the light
of the surrounding circumstances.

*A* and *B* were joint owners of adjacent lots, called the north and the south
lot. On the south side of the south lot was an old passway to the
street, partly on land of adjoining proprietors, but appurtenant to the
south lot only. A wall and sheds on the north side of the south lot
cut off approach to this passway from the north lot, and the north lot
had sufficient access to the street in other ways. *A* and *B* had recently
leased the sheds to *F* for a term of years. The only access to the street
from the sheds was across the rear of the south lot to said passway.
In a subsequent deed of the south lot, subject to said lease, was the
following reservation: "Also reserving a passway for ourselves across
said lot herein conveyed; (describing a 25-foot strip across the rear of
said lot) reserving all our rights in passing through said gangways,
including lease of land and buildings to *F*." This passway, if appur-
tenant to the north lot, would seriously injure the value of the south
lot. *Held* that this reservation, under the circumstances, was to be
construed as a reservation of the rights of passway leased by implica-
tion to *F*, and not of a permanent right of way appurtenant to the
north lot.

[Argued May 9th—decided July 19th, 1895.]

SUIT for an injunction to restrain the defendant from erect-
ing and maintaining a fence or wall across an alleged mutual
gangway; brought to the Superior Court in Hartford County
and tried to the court, *Robinson, J.;* facts found and judg-
ment rendered for the defendant, and appeal by the plaintiff
for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*William C. Case* and *William S. Case,* for the appellant
(plaintiff).

*Charles J. Cole*, for the appellee (defendant).

TORRANCE, J.   The plaintiff sought to have the defendant enjoined from obstructing a right of way which the plaintiff claims over the defendant's land.   Whether the plaintiff had any such right, depended upon the construction put upon a clause in a certain deed.   The court below found certain facts, and upon those facts decided that, under the clause in question, the plaintiff had no such right as he claimed; and thereupon rendered judgment against him, and from that judgment the present appeal was taken.

The following is the substance of the finding :—

The plaintiff and defendant are adjoining owners of land on the west side of Main street in the city of Hartford.   The plaintiff owns, what may for brevity be called, the north premises, and the defendant the south premises; and they each derive title from Walter and Henry Keney, who at one time owned both premises as an entirety.   The south premises were conveyed by the Keneys to John P. Hoffort in October, 1887, and by John P. Hoffort they were conveyed to the defendant in April, 1891.   The north premises were conveyed by the Keneys direct to the plaintiff in June, 1889.

The south premises were formerly owned by Charles Brainard, James Ward, and Roswell Bartholomew, as partners in business, and on the dissolution of the partnership by the death of Bartholomew, were divided into two equal parts, one of which was set out in severalty to the heirs of Bartholomew, and the other to Charles Brainard.

The deed of distribution contained the following : "And the said representatives of the said Bartholomew and the said Brainard, and their respective heirs and assigns, have the right and privilege of a mutual gang or passway to and from the parts of said lot so to them respectively set, said gang or passway being described as follows, viz : Beginning at the southeast corner of the store upon said lot and running thence westerly to the southwest corner of said store, thence westerly to a mere stone by Nathaniel Patten's land, thence southerly in a line of said Patten's land 11 feet to a mere stone

standing upon a lot of land hereinbefore described, owned by the said Ward and Bartholomew, called the Doolittle place, and thence easterly in a line before described of said gangway about 197 feet to Main street, thence northerly by Main street to the place of beginning, said gang or passway being 11 feet in width."

It is found that eight feet and three inches of the fee of the land covered by this gangway, on the south side thereof, subject to said gangway, was conveyed to and belonged with the Doolittle place lying south of the gangway, and that the fee of the other two feet and nine inches of land covered by the gangway, on the north side, subject to the gangway, was conveyed to and belonged with the south premises now owned by the defendant. Said eleven foot gangway was created as appurtenant to, and for the use of, the south premises now owned by the defendant, and for no other property. "So far as the ownership of the 8 feet and 3 inches of the fee of the 11-foot gangway on the south side is concerned, it does not appear that either Charles H. Brainard or H. and W. Keney, or any other person, had a right to burden it with any additional servitude than that above mentioned."

Upon the death of Charles Brainard, his son, Charles H. Brainard, became the owner of that part of the south premises which had been so set out to his father; and in 1856 he became, by conveyance from the Bartholomew heirs, the owner of the other part of the south premises. Charles H. Brainard continued to own the entire south premises down to 1876, when, by conveyance from one Deming, he became also the owner of the north premises now owned by the plaintiff, and thus become the owner of both the north and south premises as an entirety. He continued to thus own them as an entirety until September, 1886, when he conveyed them on the same day, but by separate deeds, to Walter and Henry Keney.

After Charles H. Brainard became the owner of the south premises, now owned by the defendant, "he built a large store-house on the rear of the lot, and in 1871 connected that store-house with the main building in front by a solid brick

wall ten feet high and one foot thick, without any opening or door-way through it; this brick wall ran along the north line of the premises from the east side of the store-house to the west side of the building in front; and upon the north half of the premises he erected sheds about 25 feet long from east to west, the north side of which was formed by the brick wall before mentioned." He also, in 1880, when he was the owner of both the north and south premises, cut an ordinary door-way about three and a half feet wide through said brick wall, which is still in existence, but is outside of the claimed right of way. At this time L. T. Fenn was tenant of the north premises, now owned by the plaintiff, "and also a tenant of a part of what is now the defendant's property, to wit, the sheds hereinbefore mentioned."

At the time the Keneys conveyed the south premises to Hoffort, in 1887, they had leased the north premises, and the above mentioned sheds on the south premises, to L. T. Fenn for a term of five years from the 1st of May, 1887, and he was in possession of the leased premises under said lease. The only access to the sheds was by means of the eleven foot gangway aforesaid, and thence across the south premises to the sheds.

The defendant has maintained said brick wall and sheds to the present time, as they existed when the south premises were conveyed to him in 1891. The right of way here claimed, if it exists, will greatly damage the defendant's property, and seriously interfere with its use.

The north premises, owned by the plaintiff, are entirely covered by the store and other buildings on them, except a small yard in the rear; this yard is surrounded on three sides and a part of the fourth, by the buildings, and on the remainder of the fourth side by the defendant's brick wall; the access to this yard is through his own buildings from Main or Mulberry streets, and there is no necessity or occasion for the right of way which he now claims over the south premises. The Fenn lease expired on the 1st of May, 1892.

These are, in substance, the facts and circumstances under which the deed, containing the clause upon the construction

of which this case turns, was given; and that deed is the one
from the Keneys to Hoffort, made October 10th, 1887. At
that time the Keneys owned the north premises, now the
plaintiff's land, and when they conveyed the south premises
to Hoffort they reserved, over them, a passway from the
north premises to the eleven foot passway. When later on,
in 1889, they conveyed the north premises to the plaintiff,
they also conveyed to him such rights of way over the Hof-
fort premises as are described in their deed to the plaintiff;
and when Hoffort conveyed the south premises to the defend-
ant in 1891, he did so, subject to the rights of way which the
Keneys had reserved in their deed to him. The deed from
the Keneys to Hoffort, after conveying to him the right the
Keneys had in the eleven foot gang or passway aforesaid,
contained the following: "Also reserving a passway for
ourselves across said lot herein conveyed. The east line
begins at a point on the north line of the 11 feet gangway
100 feet west of Main street, thence running north in a line
parallel with Main street 42 feet, the west line to be 25 feet
distant and parallel, reserving all our rights in passing
through said gangways, including lease of ground and build-
ings to L. T. Fenn."

In the court below the plaintiff claimed, as he now does,
that the above clause should be construed as an exception
and not as a reservation; that it excepts the land itself, and
not merely an easement of way; or, if not that, it is an
exception of an easement of way appurtenant to the north
premises, and "manifestly intended to be a perpetual ease-
ment for the benefit of the plaintiff's premises, whoever might
be the owner thereof." The court below overruled these
claims, and held that the reservation in said clause was not
intended to be a perpetual easement appurtenant to the north
premises, but only as easement "to be used in connection
with Fenn's lease of such ground and buildings as were
within the boundaries of the land deeded by Keneys to Hof-
fort, and as an easement appurtenant to the estate and in-
terest created by said lease in said ground and buildings, only

during the continuance of such lease and for no longer time, and for no other purpose."

If the parties to the deed in question have created a perpetual easement over the south premises in favor of the north premises, it makes but little difference whether we call the clause creating such right a reservation or an exception. The important question is whether they intended to create such an easement over the one in favor of the other. "In respect to whether a reservation is of a perpetual interest like a fee in the easement reserved, the question seems to turn upon whether it is a personal right, an easement in gross, or one for the benefit of the principal estate, whoever may be.its owner. In the latter case it is held to be a permanent right, appurtenant to the principal estate in the hands of successors and assigns without words of limitation." Washburn on Easements, 4th Ed., Chap. 1, § 5, par., 2. And the question whether or not the parties in this case have created a perpetual easement over the south premises in favor of the north premises, "is to be determined from the intent of the parties as gathered from the language employed to express it, read in the light of the surrounding circumstances." *Chappell* v. *N. Y., N. H. & H. R. R. Co.*, 62 Conn., 195, 204.

Reading this deed in the light of the facts found, we think it is tolerably clear that the parties to it did not thereby intend to create such an easement as the plaintiff now claims. In the first place it was unnecessary for the accommodation or convenience of the north premises, and its existence would be a great damage to the south premises. In the next place the claimed way was a practical impossibility unless the brick wall was taken down, and the sheds removed, and there is no hint or suggestion that the wall was to be taken down or the sheds removed, and there they have remained ever since.

Then again, this claimed right of way would be of no practical use to the owner of the north premises, unless he could use it in connection with the eleven foot gangway; and this he could not do, for the eleven foot gangway was appurtenant to the south premises only.

The Keneys could not impose upon the eleven foot gang-

JULY, 1895.

way any burden in favor of the north premises. If they, or their successors in ownership of the north premises, merely as such owners, used the eleven foot gangway, they would be trespassers; Washburn on Easements, 2d Ed., side page 60; and it is difficult to believe that the Keneys intended to keep for themselves and their successors, a right in the land of Hoffort which would greatly damage him, and would not only be of little use to them, but was entirely unnessary to the use and occupation of the north premises.

On the other hand, if it be asked why then make a reservation at all, the answer is obvious. Just about a month before the deed was given, the Keneys had leased the north premises to Mr. Fenn for a period of five years; and in connection therewith they had also leased him, for the same period, " the barn and sheds " and the land upon which they stood, in the rear of the store on the south premises; and the Hoffort deed was, we think, given subject to this lease of that part of the conveyed premises; and with the exception of this lease of this part, said premises were conveyed " free from all incumbrances whatsoever." So long then as the Keneys and their tenant had this interest in the south premises, they could use the eleven foot gangway in connection therewith, and it was quite natural and proper that they should reserve the use of that part of the south premises, and all the rights of passage incident thereto. On the whole, in the light of all the facts found, we think the court below came to the right conclusion.

There is no error.

In this opinion the other judges concurred.