LAURA V. WHITTELSEY *vs.* JOHN G. PORTER.

First Judicial District, Hartford, January Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A water-privilege may be so annexed to or connected with the mill property operated by it as to become an appurtenance thereof and thus pass with the latter, although not expressly mentioned in the deed.

Whether such annexation takes place in a given case must necessarily depend largely upon the character of the right as originally granted; the nature of the property upon which the right is to be exercised; the need of such a right for the full enjoyment of the property conveyed; and the intention of the parties as shown by the language of the instrument creating the right when read in the light of surrounding circumstances.

In the present case a water lease gave *W* the right to draw, for a term of 999 years, a measured quantity of water from the lessor's canal to use for power and other manufacturing purposes in and upon the adjoining "water lot or land" of *W*, which was a mill property that had been operated for more than fifty years by water furnished from the same canal under contract with the same lessor. *Held* that in view of the restrictive language of the lease, of the necessity of the privilege to the operation of the mill, and

of the conduct of all parties evincing an intention that the right to use the water was one which went with the land, a mortgage back of the mill property and its "appurtenances," by a purchaser from *W*, carried with it the water right or privilege; and that an attempted severance and assignment of such right to a stranger was void, and carried no interest in the land which would give him a right to redeem upon a foreclosure of *W's* mortgage.

The law will imply a grant of such rights and privileges connected with the property described as are necessary to the reasonable enjoyment of it for the purposes for which it was conveyed, provided these are within the power of the grantor to convey.

Argued January 6th—decided April 15th, 1909.

SUIT to secure the cancellation of certain deeds, alleged to be invalid, or, if they were of any validity, then to obtain a foreclosure of a mortgage held by the plaintiff, brought to and tried by the Superior Court in Hartford County, *Curtis, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *Error; judgment to be rendered for plaintiff*.

On the 2d of January, 1900, Frank H. Whittelsey, the plaintiff's husband, was the owner of property in Windsor Locks consisting of a tract of land lying between the west bank of the Connecticut River and the canal of the Connecticut River Company, and buildings and machinery thereon, and a water-privilege. The finding contains copies of three title deeds of said property to Frank H. Whittelsey, executed and recorded, respectively, in 1876, 1877, and 1900. The water-privilege is described in said deeds as follows: in the first, "certain buildings, water-privilege, and land connected therewith, . . . including the lease of water from the Connecticut River Company connected with said property"; in the second, "together with a certain lease of water from the Connecticut River Company. Also water wheels, . . . and the water privilege connected therewith"; and in the third, "Also all the right, title and interest we have in and to a certain lease from the Connecticut River Company, . . . dated January 3, 1846, and recorded in the

Land Records. . . . Also all right to the use of water appurtenant to said land granted in said lease."

On said 2d of July, 1900, while Whittelsey still owned said property, the Connecticut River Company executed to him and his heirs and assigns a lease, for the term of nine hundred and ninety-nine years, at a rental of $775, payable semi-annually, of a water-privilege described in the lease as "a water privilege, situated in the town of Windsor Locks, . . . between the canal made by said first party . . . and the western bank or shore of the Connecticut River. The water privilege aforesaid shall consist in the right to draw or receive from the canal of the first party and to use in and upon the water lot or land belonging to and occupied by the second party [describing the land so owned by Whittelsey] during twenty-four hours of each day, Sundays excepted, such quantity of water as will naturally flow through one or more apertures containing in the whole seven hundred and fifty square inches of opening." The lessee was to construct the flumes, water-courses and raceways leading from the canal, and to make and maintain sufficient bridges for the passage of teams over the length and width of every flume. The lease contains a provision for forfeiture for nonpayment of rent, and was duly recorded.

On July 2d, 1900, Frank H. Whittelsey mortgaged said premises to one Coffin to secure the payment of $15,000, including in the description of the property mortgaged all his right, title and interest in said lease from the Connecticut River Company, "and all rights to the use of water appurtenant to said land and granted in said lease," which mortgage is still outstanding.

On the 4th of October, 1905, Frank H. Whittelsey, for the named consideration of $1, conveyed the mill property to Sidney A. Morley by warranty deed, subject to the Coffin mortgage, which the grantee assumed. The deed referred to the land conveyed, as the same as that conveyed

to the grantor by the deeds from Seymour and from Farist and Windsor, above referred to, and described the water-privilege as follows: "together with all my interest in and to a certain lease of water privilege from the Connecticut River Company to F. H. Whittelsey, dated July 2, 1900, and recorded. . . ."

On the 4th of October, 1905, Morley mortgaged the property back to Whittelsey to secure the payment of fifteen notes of $5,000 each, one payable each year during the succeeding fifteen years. In this mortgage the land was bounded as in the deed of the same date from Whittelsey to Morley, and was further described as "the same land this day conveyed by the grantee herein to the grantor herein, together with the buildings thereon standing, also [here follows a list naming pumps, water-wheels, a 250 horse-power turbine and case, and numerous other implements and articles of machinery, etc.] and all the machinery, engines and implements, situated and used in the manufacturing establishment this day conveyed." The *habendum* was "to have and to hold the above granted and bargained premises, with the appurtenances thereof, unto him the said grantee, his heirs and assigns forever."

On the same day (October 4th, 1905) Morley conveyed the land and water-privilege so conveyed to him by Whittelsey, to the Whittelsey Paper Company, for the stated consideration of $1, subject to said mortgage to Coffin of $15,000 and the mortgage to Whittelsey of $75,000, both of which the grantee assumed as part consideration for the deed.

Immediately after the execution of the last-named deed the Whittelsey Paper Company entered into possession of said premises, and have ever since continued to operate said mill and machinery and use the water-power and privilege so obtained from the Connecticut River Company until ejected by foreclosure proceedings, as hereinafter stated.

The water is conveyed from the canal to the mill by a steel tube. There is a fall of about twenty-seven feet available for power. The mills have always, for fifty years or more, been run by water-power obtained from the canal, and no other water-power is available. The mills could not be run by steam in competition with mills run by water-power. Without the water-power the land and mills are worth about $15,000, and with the water-power from $40,000 to $50,000.

On the 3d of April, 1906, for the named consideration of $30,000, the Whittelsey Paper Company assigned to John C. Moore of Philadelphia, subject to the $15,000 mortgage to Coffin, all its "right, title and interest in and to a certain lease of water privilege," [describing in the assignment, the lease executed as above stated by tne Connecticut River Company to Frank H. Whittelsey], and on the 23d of October, 1906, said Moore assigned his interest in said lease to the defendant. Neither Moore or Porter have ever had possession of any part of said land or ever used said water-power.

The plaintiff, by assignments made March 10th, 1906, became the owner of the mortgage and notes given as aforesaid by Morley to Frank H. Whittelsey. When the first of said notes of $5,000 secured by that mortgage became due, on March 4th, 1906, it was not paid, and on the 18th of October, 1906, the present plaintiff commenced foreclosure proceedings against the Whittelsey Paper Company, and said Moore was also made a defendant, the complaint alleging that he claimed an interest in the mortgaged premises. The complaint described the mortgaged property as it was described in the mortgage to Whittelsey.

The present defendant, Porter, appeared in said foreclosure suit to defend in the name of Moore, and filed an answer, setting forth his claimed ownership of said lease of said water-privilege, under the said assignments of the Whittelsey Company to Moore and Moore to Porter; where-

upon the plaintiff amended her writ and complaint by striking out the allegation that Moore claimed an interest in the mortgaged premises, and also the name of Moore as a defendant, and on the 8th of March, 1907, obtained a judgment foreclosing the Whittelsey Paper Company of all right to redeem the property described in the judgment-file and in the recorded certificate of foreclosure, as it was described in the mortgage.

There was no appraisal of the mortgaged property, and under the execution issued March 11th, 1907, the Whittelsey Paper Company was ejected from the premises and the plaintiff placed in possession thereof, since which time she has operated the mills and used the water-privilege, and has paid the rent therefor to the Connecticut River Company, and said company has credited the plaintiff therewith on said lease.

The plaintiff alleges in the present action that neither the deed from the Whittelsey Paper Company to Moore, nor that from Moore to the defendant, conveyed to either of them any interest in said water-privilege granted to the owner of said land, and that said recorded deeds are a cloud upon her title to the land, mills and water-privilege, and tend to render the same less available to sell or rent; and asks that said deeds to Moore and to the defendant be declared invalid and that they be set aside.

The trial court rendered judgment for the defendant.

*Theodore M. Maltbie* and *William M. Maltbie* for the appellant (plaintiff).

*Charles Welles Gross*, for the appellee (defendant).

HALL, J. Upon the facts above stated the plaintiff claims that the water-privilege described in the lease of July 2d, 1900, from the Connecticut River Company to Frank H. Whittelsey, became a right inseparably annexed

as an appurtenance to the mill property; that as such an appurtenance it was conveyed by Whittelsey to Morley by the deed of the former of October 5th, 1905, and was reconveyed to Whittelsey by the mortgage back to him from Morley, of the same property on the same day; and that therefore neither Moore nor the defendant took anything by the attempted assignments of the water-privilege by the Whittelsey Paper Company to Moore, and by Moore to the defendant.

If the water-privilege is to be regarded as so annexed as an appurtenance to the mill property by the lease of July 2d, 1900, it was reconveyed to Whittelsey by the Morley mortgage, even though it was not expressly named in the deed. 3 Washburn on Real Property (4th Ed.) p. 394; *Green v. Collins*, 86 N. Y. 246. If from the use of the words, "with appurtenances thereof," in the *habendum*, and certain terms in the description of the property mortgaged, the water-power and privilege cannot properly be said to have been expressly granted, the law will imply a grant of such rights and privileges connected with the described property as are necessary to the reasonable enjoyment of it for the purposes for which it was conveyed, and which the mortgagor had the power to grant. *Collins v. Driscoll*, 34 Conn. 43, 47; *Bushnell v. Proprietors of Ore Bed*, 31 id. 150, 158. "A grant of a thing will include whatever the grantor had power to convey which is reasonably necessary to the enjoyment of the thing granted." 3 Washburn on Real Property (4th Ed.) p. 394.

Was the water-privilege in question so annexed as an appurtenance to the mill property that it passed as an incident to it, under the Morley mortgage?

The word *appurtenant* means "attached to" or "belonging to," and in law the term *appurtenance* generally means something appertaining to another thing as principal, and passing as an incident to such principal. *Harris v. Elliott*, 10 Pet. (U. S.) 25, 54; Anderson's Law Dict. That incor-

poreal rights not before attached to a particular property may, when they are to be used in connection with it, be made appurtenant to it, when such is the intent of the parties, by a separate grant of such rights, is unquestionable. *Williams* v. *Wadsworth,* 51 Conn. 277, 305; *Bissell* v. *Grant,* 35 id. 288, 296: "Although it is an undoubted proposition, that whatever is properly *appurtenant* to the principal thing granted passes with it, it is not always easy to apply the term so as to determine . . . whether the thing under consideration is appurtenant or not." 3 Washburn on Real Property (4th Ed.) p. 394. Whether, in a particular case, a right or privilege acquired by a separate grant is such that by subsequent conveyances of the property upon which it is to be exercised it will pass as an incident or appurtenance thereto, must necessarily depend largely upon the character of the right as originally granted; the nature of the property upon which it is to be exercised; the need of such a right for the full enjoyment of that property so conveyed; and the intention of the parties as shown by the language of the instrument creating the right, read in the light of the surrounding circumstances. *Russell* v. *Heublein,* 66 Conn. 486, 491, 34 Atl. 486; *Chappell* v. *New York, N. H. & H. R. Co.,* 62 Conn. 195, 204, 24 Atl. 997; *Bissell* v. *Grant,* 35 Conn. 288; *Strong* v. *Benedict,* 5 id. 210, 219.

The particular privilege under consideration was created by the grant or lease of the Connecticut River Company to Frank H. Whittelsey July 2d, 1900, and was one which could be granted as strictly appurtenant to the mill property, which Whittelsey then owned. *Smith* v. *Moodus Water Power Co.,* 35 Conn. 392, 401; *Frink* v. *Branch,* 16 id. 260; *Kennedy* v. *Scovil,* 12 id. 317, 324; *Strong* v. *Benedict,* 5 id. 210. It was granted with words of inheritance, and for a term which made it, though technically a chattel real (*Flannery* v. *Rohrmayer,* 49 Conn. 27), yet practically a fee defeasible only upon failure to perform certain conditions. *Brainard* v. *Colchester,* 31 Conn. 407, 410.

The privilege granted is expressly described in the lease as a right "to draw and receive from the canal and use in and upon the water lot or land," described by metes and bounds, which then belonged to Whittelsey, the described flow of water, and the facts found and the language of the lease show that the privilege granted was to be used for power, and other manufacturing purposes.

The property upon which the privilege was to be used, is called in the lease a "water lot." It was mill property. It had been used as a mill for fifty years or more, and during that period had been operated by power procured from the canal, by contract with the Connecticut River Company, and in the deeds of the mill property to Whittelsey, which are referred to in his deed to Morley, the then existing water-privilege from the canal is described as "connected with" and as "appurtenant to" the land conveyed.

The facts found show that the privilege granted is indispensably necessary to the operation of the mill, and that without it the value of the property would be reduced two thirds.

The intention of the parties to the lease, that the privilege granted should go with the land, is clearly shown by the language of the lease itself, which, while it grants an assignable privilege, expressly limits the enjoyment of it to the land described. It is shown, too, by the acts of the parties. The plaintiff is the wife of the lessee of the water-privilege, and is now operating the mill by means of it, under a claim of right under the decree of foreclosure, and the Connecticut River Company, by receiving rent from her, recognizes her right to do so, notwithstanding the attempted assignments to Moore and the defendant. From the fact, among others, that the mortgage from Morley to Whittelsey was to secure the payment of $75,000, probably the whole or a large part of the purchase price of the mill property and water-privilege, and that the conveyance to Morley by Whittelsey and the mortgage back were appar-

ently one transaction, it is difficult to conceive that it was not Morley's intention, if his intention in the matter is at all important, to include the water-privilege in the mortgage. It is hardly to be believed that he thought he was securing to Whittelsey the payment of $75,000, by conveying to him the mill property, while he retained himself the means of operating it.

We reach these conclusions in the case: The lease from the Connecticut River Company was made for the benefit of the factory property, and the water-privilege granted by it was, by the mortgage deed from Morley, reconveyed to Whittelsey as an appurtenance to it. *Smith* v. *Moodus Water Power Co.*, 35 Conn. 392; *Frink* v. *Branch*, 16 id. 260; *Brown* v. *Thissell*, 6 Cush. (Mass.) 254; *Blood* v. *Millard*, 172 Mass. 65, 51 N. E. 527. Since neither Moore nor the defendant owned or possessed the mill property or any part of it, neither could make any use of the water-privilege. The attempted assignments to them of the water-privilege carried no interest in the land, and they had no right to redeem under the plaintiff's mortgage. The water right was not severable from the land, and the assignees therefore took nothing by the attempted assignments. They were wholly invalid. Washburn on Easements and Servitudes (3d Ed.) p. 36; *Cadwalader* v. *Bailey*, 17 R. I. 495, 503, 23 Atl. 20; *Phillips* v. *Rhodes*, 7 Met. (Mass.) 322, 324; *Garrison* v. *Rudd*, 19 Ill. 558, 564.

There is error, the judgment is reversed and the case remanded with directions to render judgment for the plaintiff, in accordance with the views above stated.

In this opinion the other judges concurred.